ALBERT S. STONE and JOHN S. BOYER v. G. B. WANDLING et ux., Appellants.

In Banc, March 12, 1925.

1. **UNLAWFUL DETAINER:** Double Damages: Constitutional Statute. The statute (Sec. 3012, R. S. 1919) authorizing the court, in an action of unlawful detainer, upon the return of a verdict for plaintiff, to enter judgment for double the amount of damages and double

the value of the monthly rents as found by the jury, does not violate the provisions of either the State or Federal Constitution.

2. ———: ———: ———: Closing Doors of Courts: Deterring Defense. The statute authorizing the doubling of the damages and rents in unlawful detainer cases does not violate the constitutional provision that "the courts of justice shall be open to every person and certain remedy afforded for every injury to person, property or character, and right and justice shall be administered without sale, denial or delay," in that it deters defendants from asserting their rights in such cases and amounts to a partial closing of the doors of justice to them. It in no way penalizes a party for unsuccessfully testing his rights in the courts; it simply imposes a penalty of double damages only for wilfully detaining the landlord's property after the expiration of the time it was demised to the tenant, and for wilfully keeping and appropriating another's real estate against his consent and without legal right, which is conduct akin to crime.

3. ———: Contract: Interpretation: True Intention. The cardinal rule for the construction of all writings, whether contracts, wills or deeds, is to ascertain the real, true and actual intention of the parties, if possible; and if the instrument is not free from ambiguity, the circumstances and situation of the parties at the time of its execution are to be taken into consideration and the writing viewed in the light shed upon it by such circumstances.

4. ———: ———: Lease Memorandum. Plaintiffs, nephews and nieces of the owner of a dwelling house, Mrs. Gallop, in their action of unlawful detainer, brought after their aunt's death, introduced this memorandum of a contract of lease with defendants: "Mr. and Mrs. Geo. R. Wandling will make their home at 704 Bennington with Mrs. J. H. Gallop for one or two years, if they wish, and furnish heat, water, light and board for same." Mrs. Gallop had no children, and died seven months after the memorandum was signed by both lessor and lessees, and being dead at the time of the trial, defendants were not permitted to testify to many of the circumstances showing the situation of the parties; but it is admitted that defendants took possession shortly after the date of the memorandum and continued therein until the trial, which was less than two years after it was made, and it is not claimed that they did not furnish light, heat, water and board to Mrs. Gallop, and from these and other admitted facts it may be inferred that she was more or less an invalid, that they were to supply all necessaries and furnish her a home and board, and in return were to have the use of the premises free of other rent. *Held*, that the memorandum was a lease for one or two years, at the option of defendants, and they

307 Mo. Sup.—11.

were not guilty of unlawful detainer during the two years. *Held*, also, that the word "with" contained in the memorandum did not restrict the defendants' right to living with Mrs. Gallop, or terminate their right to possession upon her death, but was only meant to further indicate the premises or place where all the parties were to live together.

5. **LEASE: Expiration: Death of Landlord.** A written lease for a definite time expressly stated therein will not be presumed to expire with the death of the landlord, in the absence of a provision to that effect. A lease to tenants "for one or two years, if they wish," expressed in the memorandum, is a lease for two years, if they so elect, although the landlord dies seven months after it was made and they entered into possession. [Distinguishing Shouse v. Krusor, 24 Mo. App. 279.]

Citations to Headnotes: 1, Constitutional Law, 12 C. J. 1032, 1106; Juries, 35 C. J. 146; Landlord and Tenant, 36 C. J. 1807; 2, Constitutional Law, 12 C. J. 1106; 3, Contracts, 13 C. J. 482, 514; 4 and 5, Landlord and Tenant, 35 C. J. 400, 406, 461, 213.

Appeal from Jackson Circuit Court.—*Hon. Allen C. Southern*, Judge.

REVERSED.

*Alpha N. Brown* and *Charles M. Miller* for appellants.

(1)   The trial court erred in refusing appellants' peremptory instructions to find for appellants. (a)   Because unlawful detainer can only be maintained where the relation of landlord and tenant exists, and no such relation existed between respondents and appellants in this case. Whiteside v. Oasis Club, 162 Mo. App. 504; Swaby v. Boyer, 221 S. W. 413; Sudmeyer v. Meyer, 237 S. W. 882; May v. Lucket, 54 Mo. 437; Williams v. Treece, 184 Mo. App. 135; Andrae v. Heinwitz, 19 Mo. 311.   (b)   Because the written memorandum between appellants and Mrs. J. H. Gallop was an irrevocable license for appellants to occupy the premises for a period of two years from September 25, 1920, and respondents had no right to disturb their occupancy of the premises

thereunder. 1 Tiffany on Real Property, sec. 304, p. 679; White v. Maynard, 111 Mass. 250; House v. Montgomery, 19 Mo. App. 170; Gibson v. Association, 33 Mo. App. 165; Baker v. Railroad, 57 Mo. 265; Railroad v. Railroad, 222 Mo. 461; Shaw v. Caldwell, 115 Pac. 949. (2) The trial court erred in excluding evidence as to the lack of mental capacity of the grantor, Almeda J. Gallop, to execute and make delivery of the alleged deed, and all the circumstances surrounding the alleged execution and delivery of the alleged deed, and refusing appellants' offer of proof thereof. Gillett v. Mathews, 45 Mo. 307-308; Lehnen v. Dickson, 148 U. S. 71; Pullis v. Kalb, 62 Mo. App. 27; Tucker v. McClenney, 103 Mo. App. 318, 322; Young v. Smith, 28 Mo. 65; Pentz v. Kuester, 41 Mo. 447; Binkerhoff v. Nelson, 13 Johns. (N. Y.) 340. (3) The trial court erred in refusing to permit appellants to show what repairs were made on the house and the cost thereof to them and the expense they had been put to in breaking up their home and moving to the Gallop home, and denying the offer of proof thereof. 1 Tiffany on Real Property, sec. 304, p. 679; White v. Maynard, 111 Mass. 250; House v. Montgomery, 19 Mo. App. 170; Gibson v. Association, 33 Mo. App. 165; Baker v. Railroad, 57 Mo. 265; Railroad v. Railroad, 222 Mo. 461; Shaw v. Caldwell, 115 Pac. 949. (4) The trial court erred in doubling the damages and the value of the monthly rent under the alleged authority of Sec. 3012, R. S. 1919, and the said statute, if applicable to this case, is unconstitutional and void in providing a penalty of one hundred per cent in the event a person in possession of property seeks to have his right to possession of the property judicially determined and loses in the trial court, and thereby deters a person from seeking a judicial determination of his rights in court, which amounts to a denial of due process of law, the equal protection of the law, and is a closing of the door of justice to a litigant, all contrary to Section 10 of Article 2 and Section 30 of Article 2, of the Constitution of Missouri, and Article 14 of the Amendments to the Constitution

of the United States. White v. Delano, 270 Mo. 16; Ex parte Young, 209 U. S. 123, 147; Cotting v. Stockyards, 183 U. S. 79, 100; Railroads v. Ellis, 165 U. S. 150; Wadley Southern Rd. v. Georgia, 235 U. S. 651; Bennett v. Vattier, 136 Wis. 193.

*Crow & Newman* for respondents.

(1) The relation of landlord and tenant existed between the appellants and Mrs. J. H. Gallop. Shouse v. Krusor, 24 Mo. App. 279; Wilkinson v. Wilkinson, 62 Mo. App. 249; Adams v. Gilchrist, 63 Mo. App. 639; Gillespie v. Hendren, 98 Mo. App. 622; Williams v. Treece, 184 Mo. App. 135. (2) Appellants' term ended with the death of Mrs. Gallop. Shouse v. Kusor, 24 Mo. App. 279; Henry v. Bottling Company, 277 Mo. 508; 9 Cyc. 631 (C). (3) Respondents, being grantees of Mrs. J. H. Gallop, may maintain unlawful detainer against the tenant of the grantor. Tucker v. McClenney, 103 Mo. App. 318; Doner v. Ingram, 119 Mo. App. 156; Ray v. Blackman, 120 Mo. App. 497. (4) The mental capacity of grantor to execute and deliver the deed to respondents cannot be inquired into in this form of action for the following reasons: (a) The merits of the title shall in nowise be inquired into in a suit for unlawful detainer. R. S. 1919, sec. 3015; Jones v. Jones, 281 Ill. 595; Windett v. Hurlburt, 115 Ill. 403; Weisman Co. v. Miller, 188 N. W. 732. (b) The attempted issue to have the deed to respondents adjudged void and of no effect and therefore cancelled, because of the want of the mental capacity of grantor is an equitable defense and cannot be asserted in this form of action. Graham v. Conway, 91 Mo. App. 391; Blount v. Connolly, 110 Mo. App. 603; Medicus v. Altman, 199 Mo. App. 466; State ex rel. v. Taylor, 242 S. W. 997; Haydon v. Railroad, 222 Mo. 131; Chadwell v. Reed, 198 Mo. 359. (5) The law does not authorize the allowance of compensation for improvements in the action of unlawful detainer. Sim's Administrator v. Kelsay, 75 Mo. 68; Clemens v. Murphy.

40 Mo. 121; Kisling v. Yoder, 236 S. W. 867.  (6) The statute directing the court to double the damages and the rental value found by the jury is not unconstitutional. Barnett v. Railroad, 68 Mo. 56; Spealman v. Railroad, 71 Mo. 434; Humes v. Railroad, 82 Mo. 221; Keller v. Insurance Co., 198 Mo. 440; Barker v. Insurance Co., 269 Mo. 21; Fidelity Mutual Life Assn. v. Mettler, 185 U. S. 308; 6 A. L. R. 212, 234.  (a)  This provision of the statute has been on the statute books since 1855, and during all the time since then the same has been applied and followed in every court to which this statute has been carried.  Ish v. Chilton, 26 Mo. 259; Labeaum v. Nelson, 34 Mo. 591; Alexander v. Westcott, 37 Mo. 108.  (b) The courts have also uniformly held that: "the manifest purpose of the statute relating to this subject was to preserve the peace, to prevent personal conflicts, and to deprive any person of any authority to use force in asserting his supposed rights to possession of property held by another."  Sitton v. Sapp, 62 Mo. App. 204.

SMALL, C.—Unlawful detainer, commenced before a justice of the peace, for possession of Lot 15, Block 6, West Ridgway Place, in Kansas City.  Complaint alleged plaintiffs were owners and entitled to possession, and that defendants wilfully and without force held over said premises after the time they were demised or let to them; that the value of monthly rents and profits was $75. Prayer was for restitution and damages and value of monthly rents.  The justice rendered judgment for plaintiffs, and defendants appealed to the circuit court.  In that court, at the time of trial, defendant's attorney stated that the defense was that defendants moved into the premises at the solicitation of the owner, Mrs. Almeda Gallop, who was an invalid and lived alone in said premises, under a written memorandum that they would have the option of staying there for a year or two years, and in lieu of rent they were to furnish her heat, water, light and board; that they complied with their agreement; that Mrs. Gallop died during the first year, and that the second year would not expire until September

after the suit was brought; that prior to her death, plaintiffs obtained a deed to the premises from Mrs. Gallop at a time she was not capable of making a deed, and their deed is void.

Plaintiffs then offered testimony to show that the rental value of the property was $35 or $40 per month; also their deed from Mrs. Gallop. This deed was dated January 7, 1921, acknowledged the same day, and recorded April 4, 1921. It was a warranty deed in form; consideration, $1. They further showed that plaintiffs were nephews of Mrs. Gallop, and that she was a widow. That the nearest relative who survived her was the mother of one of the plaintiffs. They also introduced the following paper signed by defendants and Mrs. Gallop: "Mr. and Mrs. Geo. B. Wandling will make their home at 704 Bennington with Mrs. J. H. Gallop for one or two years, if they wish, and furnish heat, water, light and board for same. (Signed) G. B. Wandling, Clare R. Wandling, Mrs. J. H. Gallop. Dated, September 25, 1920."

It was also shown by plaintiffs that 704 Bennington was the property sued for. On cross-examination of plaintiffs' witness, the court ruled out all questions as to the delivery of the deed and condition of mind of Mrs. Gallop when she made the deed, and rejected defendants' offer to prove by the witness that at the time of the execution of the deed Mrs. Gallop was of unsound mind. The plaintiffs also showed that defendants were in possession at the time of Mrs. Gallop's death, to-wit, March 26, 1921. This was all of plaintiffs' evidence, and thereupon defendants offered a demurrer thereto, which was overruled.

Defendant Clare R. Wandling testified that she was the wife of defendant George B. Wandling; that it was their purpose to remain in the premises for the two years mentioned in said document, executed by defendants and Mrs. Gallop, which would be until September 25, 1922, and that plaintiffs never made any demand in writing for said premises. Defendants then offered to prove by

this witness and also by her husband that defendant refused to move out to Mrs. Gallop's house unless she entered into an agreement whereby their arrangement would last for a year or two years, if defendants wished. that their moving involved breaking up their home and moving to Mrs. Gallop's at great expense, and that that was one of the essential elements in the execution of such agreement. That in order to make the place, 704 Bennington, so that they could live in it, it was necessary for defendants to make quite an expenditure in the way of putting in electric lights, water, gas, gas stove and screens and other things. All these offers were refused on the ground that Mrs. Gallop, the other party to the contract of lease, was dead and defendants were therefore not competent witnesses.

This was all the evidence. At its close the court refused a demurrer to the evidence offered by defendants, and gave a peremptory instruction to find for the plaintiffs for possession and "such damages as you consider from the evidence the reasonable value of the premises from March 26, 1921, to the date of trial, and to fix the monthly rental value." Defendants duly saved their exceptions. The jury found for plaintiffs for possession, $150 damages, and that the monthly rental value was $30. Judgment was entered on the verdict for possession and double damages and monthly rental value. Defendants filed a motion for a new trial, which was overruled and they appealed to this court.

The motion for a new trial saved all of defendants' exceptions at the trial, and besides, set up that the unlawful detainer statute authorizing double damages in such cases violated Sections 10, 28 and 30 of Article 2, of the Constitution of Missouri and the Fourteenth Amendment to the Constitution of the United States.

I. Section 10 of Article 2 of the State Constitution provides: "The courts of justice shall be open to every person, and certain remedy afforded for every injury

**Double Damages: Constitutional.** to person, property or character, and that right and justice shall be administered without sale, denial or delay." Section 28 of said Article 2 preserves the right of trial by jury "as heretofore enjoyed." Section 30 of said Article 2 provides: "That no person shall be deprived of life, liberty or property without due process of law." The same inhibition is contained in the Fourteenth Amendment of the Constitution of the United States.

We do not think the statute (Sec. 3012, R. S. 1919) which provides that where there is a verdict for plaintiff in unlawful detainer cases the court must enter judgment for double the damages and double the monthly rental value of the premises found by the jury, violates any of the provisions of the State or Federal Constitution invoked in this case.

The argument of learned counsel for appellant is that to inflict a penalty of one hundred per cent above the actual damages sustained by the plaintiffs deters defendants from asserting their rights in such cases **Closing Doors of Courts.** and amounts to a partial closing of the doors of courts of justice, as has been held where treble damages were fixed by the statutes fixing freight rates for unsuccessfully bringing suits to contest their validity. [White v. Delano, 270 Mo. 16; Ex parte Young, 209 U. S. 123; Cotting v. Stockyards, 183 U. S. 79.] In those cases the statutes imposed a direct penalty for exercising the constitutional right of appealing to the courts for a settlement and adjudication of controversies. The statute before us imposes a penalty of double damages for wilfully detaining the landlord's property after the expiration of the time it was demised or let to the tenant. The statute in no way penalizes any party for unsuccessfully testing his rights in the courts, but for wilfully keeping and appropriating another man's real estate against his consent and without any legal right to do so. Such conduct borders upon a criminal act. If land were personal property it would be akin to embezzlement. If only the rental value could

be collected by the landlord after the lease expired the tenant could, in effect, extend the lease by simply defying the landlord and remaining in possession during the litigation, no matter how long drawn out it might be. A penalty sufficient to deter such practices should be imposed by the law, of which primarily the Legislature is the sole judge. We hold the penalty in this case is not unreasonable or arbitrary. This statute has been in existence in this State ever since the enactment of the Revised Statutes of 1855, and its constitutionality has never been assailed before in this court. We have long since held the double-damage acts for killing stock by railroads constitutional. [Barnett v. Railroad, 68 Mo. 56; Spealman v. Railroad, 71 Mo. 434.] Also the statutes imposing penalties on insurance companies for vexatious delay in payment of losses. [Keller v. Ins. Co., 198 Mo. 440; Barber v. Ins. Co., 269 Mo. 21.] We decide this point against appellant.

II. We think the memorandum shown in evidence was a lease for one or two years at the option of defendants and they were not guilty of unlawful detainer. The cardinal rule for the construction of all written documents, whether contracts, wills or deeds, is to ascertain the real, true, actual intention of the parties if possible, and if the document itself is not free from ambiguity the circumstances and situation of the parties at the time of its execution are to be taken into consideration and the writing viewed in the light shed upon it by such circumstances. [Trust Co. v. MacGovern, 249 S. W. 1. c. 68.] Most, if not all, the circumstances offered to be shown by defendants would have been competent, but the offer was properly denied under the statute which prohibits one party from testifying when the other party to the contract is dead. [Sec. 5410, R. S. 1919.]

*Valid Lease: No Unlawful Detainer.*

But it is admitted by learned counsel for respondents in their brief that the Wandlings were close friends of Mrs. Gallop for a number of years, and plaintiffs' evi-

dence shows that she was a widow, had no children, and
she died about seven months after the written memoran-
dum of September 25, 1920, was made. It is also ad-
mitted that defendants took possession of said property
shortly after the date of said memorandum and continued
therein until the trial. It is not claimed they did not
furnish light, heat, water and board to Mrs. Gallop as
required by said contract. From the fact that Mrs.
Gallop desired the defendants to board and take care of
her at her house and to supply the household with neces-
saries, as shown by the memorandum and that she died
within a few months after the lease to defendants, it may
be inferred that she, was more or less of an invalid.
These circumstances may be considered in construing
this document. It is true the paper says that ''Mr.
and Mrs. Geo. B. Wandling will make their home at
704 Bennington *with* Mrs. J. H. Gallop'' (italics ours),
but that is not all, for the writing continues *"for one
or two years, if they wish,* and furnish heat, water, light
and board for same.'' It is clear the paramount pur-
pose of this writing was to insure defendants that they
could make their home at said place *if they wished for
one or two years,* and that their right was not restricted
to living there *with* Mrs. Gallop and terminated at her
death, as argued by respondents' learned counsel. The
words ''with'' her, in the connection in which they were
used, were simply intended to further designate the prem-
ises or place where defendants could make their home.
The subsequent provisions in the memorandum that the
defendants were to furnish Mrs. Gallop with board and
supply everything necessary for the household shows
that they were put in possession and were the tenants
of Mrs. Gallop and that she was to make her home or
live with them. Indeed, the complaint alleges that the
premises were demised or let to the defendants. Al-
though nothing was said about it in the document, Mrs.
Gallop being an invalid, it is not unlikely that the parties
had that in mind, and therefore they provided that de-
fendants might remain in the property, if they wished,

for one or two years, so that their right, to remain if they wished, would not terminate in case anything happened, such as death, to Mrs. Gallop, before that time. A written lease for a definite time expressly stated in the lease will not be presumed to expire with the death of the landlord in the absence of a provision to that effect in the lease.

We therefore hold that defendants' term had not expired by the terms of their lease when this suit was brought and they were not guilty of unlawful detainer. Whether defendants were obligated to pay the reasonable value of the use of the premises as rent after the death of Mrs. Gallop, or whether under the lease made the only rent to be paid by them for the entire term was the board and care for Mrs. Gallop, which defendants supplied, we need not consider or decide on this appeal. It is not before us.

III.   But we are cited to the case of Shouse v. Krusor, 24 Mo. App. 279, as decisive of this case against appellant.   We do not so consider it.   In that case a mother owned one undivided fifth of a farm, and her son owned an undivided two-fifths interest therein.   "In the early part of 1883 these parties entered into an arrangement by which Mrs. Burruss let her said son have possession of her one-fifth and also some money belonging to her, in consideration he would furnish her a home at his house, take care of and provide for her.   The lease began on the first day of March, 1883.   She, accordingly, went to her son's house and so continued to live with him until in the month of January, 1884, when she went on a visit to her daughters and sickened and died on the 9th day of April, 1884. From the testimony of the witnesses it would appear as if they regulated the lease arrangement as a letting from year to year.   At all events, the son continued to hold the land up to the time of his mother's death and until he died in the fall."   The court, per PHILIPS, J., said, page 281: "Although some of the witnesses speak of

*Distinguishing Shouse Case.*

the contract as a renting from year to year, it is the clear meaning of the contract that the arrangement should continue no longer than the natural life of the lessor, as the consideration of the letting was that the lessee should provide her a home. The term ended with her death.'' That case is clearly distinguishable from this. There no written agreement expressly gave the tenant a definite term, as in this case. There the lease expired, there being no term expressly fixed, by inference, upon the death of the mother. Here there is an express provision in the lease fixing the term of the tenancy at one or two years at the option of the tenants, without reference to the death of the landlord or any other contingency or condition. The maxim, *expressum facit cessare tacitum* applies.

The result is, the judgment below is reversed, with directions to the court to enter judgment for the defendants.

PER CURIAM:—The opinion of SMALL, C., former Commissioner of this court in Division One, is adopted as the opinion of Court in Banc; *Graves, C. J.,* and *Walker, White* and *Woodson, JJ.,* concur; *David E. Blair* and *Ragland, JJ.,* dissent; *Atwood, J.,* not sitting.