BUDDON REALTY COMPANY, A CORPORATION OF MISSOURI, AND ERROL CORPORATION, A MISSOURI CORPORATION, APPELLANTS, v. S. MAYNER WALLACE, AS ADMINISTRATOR D. B. N., C. T. A. OF THE ESTATE OF CLAUDE A. LOVEJOY, DECEASED, RESPONDENT.—189 S. W. (2d) 1002.

St. Louis Court of Appeals. Opinion filed October 16, 1945.

Appellants' motion for rehearing overruled November 13, 1945.

Certiorari denied by Supreme Court January 8, 1946.

*Bryan, Cave, McPheeters & McRoberts* for plaintiffs-appellants.

902

*S. Mayner Wallace* for respondent, *pro se.*

ANDERSON, J.—This is an appeal by plaintiffs from a judgment dismissing their petition and sustaining defendant's counterclaim for a declaratory judgment.

The plaintiff Errol Corporation is the owner of the fee simple title to land located at Eleventh and Pine streets, in the city of St. Louis, on which is erected the Majestic Hotel. The plaintiff Buddon Realty Company is the lessee of the said property under a ninety-nine year lease from the said Errol Corporation.

The evidence shows that under date of February 18, 1939, the Buddon Realty Company leased the said hotel property, together with the furnishings, furniture, and equipment, to Claude A. Lovejoy, for a term of fifteen years, beginning on the first day of March, 1939, and ending on the last day of February, 1954, at a monthly rental of $1,250 per month during the first five years, $1,500 per month during the next five years, and $1,750 per month during the last five years of said term. The lease further provided that the lessee, on or before the last day of February, 1939, should deposit $5,000 with the lessor, which amount should be spent by the lessee for the improvement and furnishing of the lobby floor, and any part of such fund not so spent should be expended by the lessee for furnishings, fixtures, or improvements in other portions of the hotel. The lease also provided that during the first year of the lease the lessee should either contract for or expend $25,000 for furnishings, equipment, improvements, and rehabilitation; that for the following five years, the lessee should spend $5,000 per year, and thereafter until the end of the term $2,500 per year, for the same purpose. The lease further provided that as and when the substituted items were paid for, that those that had been replaced should become the property of the lessee; but, at the termination of the lease, by breach or otherwise, all furniture, furnishings, and replacements that represent the replacements should belong to the lessor. However, the lease further provided that "any personalty replaced by the furniture or furnishings that the Lessee so procures shall be preserved intact and shall belong exclusively to the Lessor until such time, when and if the substituted furniture and furnishings have been paid for in full and receipt exhibited to the Lessor, at which time the title to this furniture and equipment that has been so replaced will be vested in the Lessee." The lease also provided that when furnishings and equipment were purchased, the lessee would, prior to their installation, furnish written instruments signed by the vendors in which said vendors agreed not to look to the lessor for payment. The lessee also agreed to pay for all necessary repairs on the inside and on the outside of the said building, except repairs to the roof, gutters, downspouts, and walls.

Other provisions of the lease material to the issues on this appeal are:

"Fourth: It is expressly agreed between the parties hereto that this lease shall not be assigned, nor shall any part of the demised premises be let or underlet by the Lessee to any person whomsoever, without the written consent of the Lessor endorsed hereon . . . and should the Lessee undertake to assign this lease, or to sublet any part of the demised premises except as above provided without the written consent of the Lessor, the Lessor may take any action which he deems proper to restrain or prevent such sub-letting or sub-leasing.

"Fifth: The Lessee covenants and agrees that during the entire term of this lease he will conduct in the demised premises a first-class hotel . . .

"Tenth: No waiver of any forfeiture by acceptance of rent or otherwise, shall waive any subsequent cause of forfeiture, or breach of any condition of this lease; nor shall any consent of the Lessor to any assignment of this lease or the subletting of said premises, or any part thereof, be held to waive or to release any assignee or sublessee from any of the foregoing conditions or covenants, but every such assignee or sublessee shall be expressly subject thereto, except as hereinbefore expressly provided; nor shall the consent of the Lessor herein to any assignment of this lease or subletting of any portions of the demised premises warrant the Lessee to again assign this lease without the written consent of the Lessor being endorsed hereon.

"Eleventh: If Lessee, or his assigns, should be put into the hands of a receiver or should file a petition in bankruptcy, or should any petition of bankruptcy be filed against either of them, Lessor shall forthwith have the right to declare the lease terminated and retake possession of all the property. Under no circumstances shall any assignment or transfer of the lease or the leased property or any portion thereof be effectuated by any legal proceedings or by operation of law, nor by reason of any levy and sale or any bankruptcy or receivership proceedings of any kind. The lease shall under no circumstances, by operation of law or otherwise pass as an asset to any receiver or trustee in bankruptcy.

"Twelfth: The Lessee further agrees to quit and deliver up the peaceable possession of the said premises to the Lessor when this lease terminates by limitation or by forfeiture, with all the furniture, fixtures, equipment, keys, locks, bolts, window fastenings and other apparatus, whether placed therein by the Lessor or by the Lessee . . . .''

The lessee took possession of the hotel property under the lease and continued in possession until his death on April 19, 1942.

On May 4, 1942, the probate court appointed defendant administrator d. b. n., c. t. a. of the estate of Claude A. Lovejoy, the lessee herein. Thereafter defendant entered into possssion of the leased premises, claiming the leasehold as an asset of the estate of said decedent.

On June 4, 1942, plaintiffs served a notice upon the defendant, demanding that he remove from the Majestic Hotel property, and that he surrender possession of the same to plaintiffs within ten days thereafter. The notice called attention to those provisions of the lease which referred to the purchase by the lessee of new furniture, to the fact that title to the old furniture should remain in the lessor, and to the fact that the furniture should not be removed from the premises until the substituted furniture had been paid for by the lessee. The notice further stated that: ''The Lessee did remove the old furniture and fittings as soon as he installed the new but the new is not paid for hence he has no title to the old.'' The notice also referred to the provision of the lease forobidding an assignment without the written consent of the lessor, but it did not specify the particulars wherein this provision was breached by the lessee. The notice then informed the lessee:

''In view of the provisions of the lease concerning the installation of new furnishings, fittings and installments; the provisions thereof restricting the right to assign or transfer the lease without the written consent of the Lessor being endorsed thereon and the defaults which the Lessee has made under the provisions thereof, this is to notify you that the Lessor elects to take immediate possession of the hotel promises and demands that you surrender the possession to the owners and Lessors without further delay.''

The evidence shows that the defendant forwarded to the lessor each month a check for the rent of the said hotel; that these checks were cashed by the lessor. However, in each instance the lessor wrote a letter advising defendant that the money could not be applied as rent. The first three letters stated that the money would be applied ''to amounts in default under the lease for said property.'' The next three letters stated that the money would ''be applied to the delinquent amount Mr. Lovejoy owed the Buddon Realty Company, before his death on account of his lease with the Buddon Realty Company for the Majestic Hotel.''

The lessor's letter of November 9, 1942, after acknowledging receipt of defendant's check, and advising that the money would be applied to sums owing the lessor, stated: ''You have understood our position from the beginning, which is that this lease terminated on the death of Mr. Lovejoy.'' This was the first time any specific mention was made that the death of Lovejoy terminated the lease.

The evidence further shows that on May 2, 1942, plaintiff Buddon Realty Company, Claude Kildow Lovejoy, a son of Claude A. Lovejoy, who was acting for the domiciliary executrix Viola Lovejoy, widow of the deceased, and Victor G. Williams entered into a contract under which the unexpired term of the lease was attempted to be transferred to Williams for $50,000, of which plaintiff Buddon Realty

Company was to receive $20,000. Defendant refused to recognize this contract and it never was carried out.

Plaintiffs introduced considerable evidence in an attempt to show that the lessee had violated the terms of the lease in failing to repair the premises and in failing to comply with the terms of the lease with respect to the purchase of furniture and equipment. It will not be necessary to review this evidence because plaintiffs' contentions along this line have been abandoned.

This suit was filed on June 18, 1942. The original petition does not appear in the record. The amended petition charged fraud on the part of Lovejoy in concealing the fact that about two years before executing the lease he had made a will leaving all of his property to his wife and children, and asked that the court terminate the lease for that reason. The petition further alleged that Lovejoy failed to make repairs on the premises as required by the lease; failed to paint the inside or outside of the building, although the same required painting; permitted the elevators in said building to be and remain out of repair; and failed to give the business his personal attention, but remained away and entrusted the business to a manager, with the result that the business and profits therefrom diminished and the reputation of said hotel was damaged. The petition further alleged that S. Mayner Wallace was operating the hotel under the direction of the probate court and without the consent of the lessor endorsed on said lease.

The petition then alleged that the said Lovejoy violated the terms of the lease which provided that when furnishings and equipment were purchased the lessee would furnish prior to their installation documentary instruments signed by the vendors in which said vendors agreed that they would not look to the lessor for the payment thereof, by failing to show or present to lessor such instrument; and further breached his agreement by removing from the hotel furnishings which had been replaced by new furnishings before the new furnishings were fully paid for.

The petition further averred that said lessee did not expend for furniture, furnishings, and rehabilitation the sum of $25,000 during the first year of the lease, but spent less than $10,000 for said purpose; that during the next succeeding two years lessee did not spend for said purpose the sum of $5,000 per year as required by the lease.

The petition then alleged the appointment of defendant as administrator d. b. n., c. t. a., and the serving, on June 4, 1942, of the notice and demand for surrender of the premises.

The prayer of the petition asked that the court adjudge and decree: That said lease became null and void upon the death of Claude A. Lovejoy; that the action of the probate court in appointing defendant ancillary administrator, and as such authorized to take charge of said hotel under said lease, was improper; and that plaintiffs are

entitled to the possession of said premises, and all the contents thereof, except such part as actually belonged to Claude A. Lovejoy. There also was a prayer for general relief and for judgment for plaintiff Buddon Realty Company for the sum of $50,000 with costs.

Defendant's answer, after pleading a general denial, averred that at no time had the plaintiffs ever given to the deceased or defendant any notice of any default, except the notice of June 4, 1942, served on defendant, to the effect that the passage of the deceased's title to the unexpired portion of the lease to defendant constituted a violation of the covenants against assignment contained in said lease; and that plaintiffs' failure to give any notice in writing, during any of said three years of said alleged defaults, constituted a waiver by plaintiffs of any default in any such year.

The answer further alleged that defendant paid to plaintiff Buddon Realty Company on May 5, 1942, and each month thereafter, the agreed rental for said hotel, all of which payments were accepted by plaintiffs; that the tenth paragraph of said lease expressly provided that any acceptance of rent should constitute a waiver of any forfeiture, or of any prior breach of any condition of said lease; and, that therefore plaintiffs were estopped from making their contentions of alleged defaults.

The answer further averred that plaintiffs had waived their present contentions because on May 2, 1942, plaintiff Buddon Realty Company and one C. Kildow Lovejoy (purporting to act for Viola Lovejoy, widow and domiciliary executrix of the estate of Claude A. Lovejoy), and one Victor G. Williams entered into a contract whereunder the unexpired term of the lease was attempted to be transferred to Williams for $50,000, of which plaintiff Buddon Realty Company was to receive $20,000, which contract defendant at all times has refused to recognize.

Defendant also filed a counterclaim in which he prayed for a declaratory judgment decreeing the validity of his title, as administrator, to said unexpired lease, and adjudging his right and authority to administer, including his right and authority to sell and deliver, the same for the payment of the creditors of said estate and for the payment of taxes against said estate and for the distribution of the remainder, if any, pursuant to the last will of the deceased.

The court in its judgment found in favor of the defendant, and ordered plaintiffs' petition dismissed. In its decree, the court found: That it was not the intention of the parties to the lease that the same should be terminated upon the death of the lessee; that it was not the intention of the parties that the devolution of title occasioned by the death of the lessee should operate as an inhibited assignment of the lease; that the phrase "operation of law" as used in the lease was not intended to refer to the death of the lessee; that there was no evidence of any fraud by said lessee as alleged by plaintiffs; that the lease was

not "personal" with respect to the lessee in the sense that his death ended the term of said lease; that the acceptance of rent from defendant created an estoppel against plaintiffs' contentions in the case; that plaintiffs' failure to give notice of any alleged default, as required by the lease, constituted a waiver of any such alleged default; that lessee substantially complied with the terms of the lease with respect to the required expenditures, and that plaintiffs had failed to sustain their burden to show failures to comply with said provisions. The court then declared that defendant as administrator possessed a valid title to and the right to possession of, supbject to the terms of the lease, the unexpired term of said leasehold; that pursuant to proper orders of the probate court, said unexpired leasehold might be distributed and delivered in kind to the party or parties entitled thereto under the will of said deceased lessee; that said leasehold might be sold and delivered by defendant to any purchaser if so ordered by the probate court.

Plaintiffs' first point is that the bequest of the leasehold by the testator in his will was a breach of the general covenant not to assign the leasehold estate. There is no merit to this contention. A case squarely in point on this proposition, which we believe correctly states the law, contrary to appellants' contention, is Squire et al. v. Learned, 196 Mass. 134, 81 N. E. 880, 11 L. R. A. (N. S.) 634. In that case plaintiff brought suit for specific performance of a lessee's covenant not to assign. The defendant set up was that the bequest by the lessee of his leasehold estate to his executors, or the transfer of it by the executors to themselves as trustees, was a breach of the covenant not to assign the lease. After reviewing the authorities, the court held:

"If it had been the intention of the parties to bring the leasehold interest to an end on the lessee's death, a provision to that effect could have been inserted. So if it had been their intention to provide that the leasehold interest should not pass by will although it could vest in an administrator, a clause to that effect could have been adopted. See, for example, Anonymous, 3 Leon. 67, s. c. sub nomine Parry v. Herberts, 4 Leon. 5. In the absence of such or similar specific provisions, the insertion of a general covenant not to assign ought not in our opinion to be construed to prevent the transmission of the leasehold interest either to an administrator or to an executor or legatee."

Appellants also contend that the court erred in failing to find and hold that the lease in question terminated upon the death of the lessee. In support of this contention, appellants argue that, considering the terms of the contract, the nature of the business, and the peculiar qualifications of the lessee, the parties to the lease must have contemplated a contract personal to Lovejoy which would necessarily terminate on his death. The terms of the lease relied upon as

showing such intent are: (1) The covenants against voluntary alienation without the written consent of the lessor; (2) the provision that the lessee should conduct on said premises a first-class hotel; and (3) the provisions of article eleven which provide against certain types of involuntary alienation. They also argue that the omission of the provision customarily found in such instruments, to the effect that it should be binding upon and inure to the benefit of the heirs, executors, administrators, successors, and asssigns of the parties, likewise tended to show an intent that the lease was personal to Lovejoy.

As to the nature of the business, appellants argue that the operation of a hotel is a highly specialized business which requires the utmost skill and knowledge upon the part of the operator, which can be gained only through experience. They refer to the knack of selling such intangibles as hospitality, personal interest, prestige, style, and the like, and they state that unless the operator of a hotel possesses such skill and knowledge, together with a high degree of integrity, the value of hotel property may be greatly depreciated or destroyed. They then state that Mr. Lovejoy met the necessary qualifications of a hotel operator; that he had wide experience, was thoroughly acquainted with the problems of operating hotels of the kind, quality, and class of the Majestic Hotel, and that he knew the desires and requirements of the clientele of such hotels; that his reputation and record with respect to integrity and the satisfactory maintenance of hotels operated by him was good.

In considering this contention, we are compelled to point out that the record contains no evidence which touches on the peculiar qualifications of Lovejoy as a hotel operator other than what might be inferred from the fact that he operated another hotel in Nashville, Tennessee. The record does show, however, that he did not personally operate the Majestic Hotel, but did so through a resident manager. Nor does it appear that the successful operation of a hotel requires any higher degree of integrity than any other commercial undertaking, or that as compared to other businesses greater skill and knowledge is required, so that the owner, in all likelihood, would rely upon such qualifications to the exclusion of all other considerations, and would make a purely personal contract for its operation. This intent is expressly negatived in this case by the very provisions relied upon by the appellants. The lease does not prohibit the assignment of the lease to others, but provides that it may not be assigned without the written consent of the lessor. It follows, therefore, that an assignment may be made with the lessor's consent, and that the lessor never intended the contract as personal to the lessee, but one which could be performed by another who was satisfactory to lessor. The provision that the lessee should conduct a first-class hotel in the premises merely indicates a desire on the part

of the landlord to preserve the character of the premises as a hotel. Article Eleven was clearly intended to protect against the possibility of securing an undesirable tenant through proceedings of the kind mentioned in said article.

Appellants further argue that an intent to terminate the lease upon the death of the lessee is shown by the provision in paragraph eleven of the lease alone. Among other things, said paragraph provides that "Under no circumstances shall any assignment or transfer of the lease or the leased property or any portion thereof be effectuated . . . by operation of law." If this were all that there was to paragraph eleven, there might be merit to appellants' contention. But, the phrase "by operation of law" does not stand alone. It follows and is followed by a particularization of the situations wherein the lease should terminate or be forfeited. In this particularization death is not mentioned, and transfer by death could only be construed as being intended to be embraced within the general term "by operation of law" if transfer by death were of the same general kind or character of transfer referred to in the particular instances enumerated. [12 C. J. 537; 17 C. J. S. 731.] Such is not the case. The specifically mentioned assignments or transfers are those consequences of the lessee's acts, such as mismanagement or failure to pay his debts or obligations which might affect his status as lessee. Death is not such a consequence. Furthermore, the phrase "by operation of law," placed as it is, could only be meant to refer to the same general type of legal proceedings as those enumerated, that is, proceedings directed against the lessee or to which he was a party.

We are fortified in this view when we examine the lease as a whole, as we must do in ascertaining the intention of the parties as expressed in the language used. It hardly seems reasonable that a lessee, taking a long-term lease, would obligate himself to spend, during the first two years of the term, the large sums of money for furnishings and equipment which this lease calls for, title to which property upon termination of the lease was to pass to the lessor, and at the same time would agree to a termination of the lease upon the uncertain contingency of death.

We rule that the lease in question was not terminated by the death of the lessor by reason of the provisions of paragraph eleven.

Appellants further complain that the trial court erred in adjudging and declaring that the unexpired term of the lease may validly and effectually be distributed and delivered in kind to the party or parties who may be entitled thereto under the will of the deceased lessee, and in further adjudging and declaring that said alleged unexpired term may be sold to any purchaser, if so ordered by the probate court in the administration of the estate of said deceased lessee. In support of this assignment, appellants argue that such a transfer violates the general covenant against assignments. To this

we cannot agree. Such covenants do not apply where the party making the assignment acts in the discharge of a duty cast upon him by the law. [32 Am. Jur., p. 302, sec. 340, "Landlord and Tenant"; Squire et al. v. Learned, 196 Mass. 134, 81 N. E. 880; Francis v. Ferguson, 246 N. Y. 516, 159 N. E. 416; Seers v. Hind, 1 Ves. Jr. 294, 30 Reprint 351.]

We are of the opinion that the judgment of the trial court should be affirmed. It is so ordered. *Hughes, P. J.,* and *McCullen, J.,* concur.

## ON MOTION FOR REHEARING.

ANDERSON, J.—In their motion for rehearing appellants complain that in applying the rule of *ejusdem. generis* to paragraph 11, we have overlooked the well-recognized exception to that rule, mainly, that it does not apply when the specific words embrace all objects of the class so that the general words become meaningless. In support of this assertion, appellants urge that there could be no transfer of the lease in question, voluntary or involuntary, other than a transfer upon death of the lessee, which is not adequately and specifically prohibited by those provisions of the lease other than the phrase "by operation of law," and that to hold that transfer by death was not covered by such phrase renders the latter meaningless. This contention was urged in the original briefs and at the hearing, and was considered by the court, although it was not specifically covered in the opinion. The fallacy of appellants' position lies in assuming that all possible transfers of the lease, except upon death of the lessee, are prohibited by the specific prohibitions. There are other transfers which are not clearly covered by the specific prohibition, such as a sale under a mortgage, or under a distress, for failure to pay federal income taxes, or possibly a general assignment for the benefit of creditors. Therefore, in our judgment the interpretation we have given to paragraph 11 does not render the words "by operation of law" meaningless, so as to make our opinion in conflict with the law announced by the opinions cited and relied upon by appellants.

The appellants' motion for rehearing is overruled. *Hughes, P. J.,* and *McCullen, J.,* concur.