In the Matter of the ESTATE of Opal LEW-IS, a/k/a Opal R. Lewis, Deceased.

RIVERBANK ASSOCIATES, Claimant, Appellant,

v.

David C. GODFREY, Executor of the Estate of Opal Lewis, a/k/a Opal R. Lewis, Deceased, Respondent.

No. 34800.

Missouri Court of Appeals, St. Louis District, Division No. One.

March 6, 1973.

Bryan, Cave McPheeters & McRoberts, Charles G. Siebert, Jerome M. Rubenstein, St. Louis, for appellant.

David C. Godfrey, St. Louis, for respondent.

WEIER, Judge.

On appeal, lessor presents us with only one issue: Is the estate of deceased lessee bound by the terms of a lease which specifically provided that the lease shall be binding upon the heirs, executors, and administators of lessee? We see no ambiguity in this clause and hold that the estate of the lessee is bound by the terms of the lease. The judgment is reversed and remanded with directions.

In the circuit court it was stipulated by the parties that Opal R. Lewis executed a lease on April 15, 1970, whereby she leased Apartment 4–L in the Montclair Apartments from Riverbank Associates, a part-

nership. The lease commenced on the 1st day of May, 1970, and ended on the 30th day of April, 1972. Rental was $135.00 per month. The last paragraph of the lease provided: "The words Lessor and Lessee shall include singular and plural, masculine and feminine, individual and corporate persons and shall include the successors and assigns of Lessor and the heirs, executors and administrators of Lessee and his sublessees and assignees when sublease or assignment is permitted by Lessor, and this lease shall be binding upon and inure to the benefit of all such persons."

On March 1, 1971 Opal Lewis died. At the time of her death the rent had been paid through February, 1971. No rent had been paid for March or for anytime thereafter. At the time of the execution of the lease she had paid one month's rent, or $135.00, as a security deposit.

After the estate of Opal Lewis was opened in the Probate Court of the City of St. Louis, a claim was filed by Riverbank Associates. Upon a hearing the claim was allowed in the sum of $135.00 rent for the month of March, 1971, together with $170.-00 Riverbank spent in clearing and redecorating the apartment. The Court determined that the lease was intended to be only a personal obligation of the lessee and hence terminated on the lessee's death. Upon appeal to the circuit court, the judgment was affirmed. That court reasoned that the prohibition against subletting or assigning without permission of lessor indicated the obligation between the lessor and the lessee was a personal one. Therefore, upon the death of the lessee her obligation under the terms of the lease terminated.

■ The death of a party does not usually terminate a lease for a term of years unless it is one of a personal nature, the presumption being that the parties intend to bind their personal representatives, whether specifically referred to in the lease or not. On the other hand, if the terms of the lease and the surrounding facts and circumstances show that the lease was intended to be only a personal obligation of the lessee, then there is necessarily an implied condition that the death of the lessee will terminate the lease. Warnecke v. Rabenau's Estate, 367 S.W.2d 15, 17 [1] (Mo.App.1963). Thus in Stone v. Wandling, 307 Mo. 160, 270 S.W. 315 (banc 1925), the death of the lessor did not terminate the lease; and in Buddon Realty Co. v. Wallace, 238 Mo.App. 900, 189 S. W.2d 1002 (1945), the death of the lessee did not terminate the lease. This was true even though the terms of the leases there involved had no provision expressly binding the heirs, executors and administrators of the lessee. In *Buddon,* supra, appellant advanced the same reason given by the circuit court in the case at bar to support the finding that the lease was a personal obligation of the lessee that terminated at her death. This was based on the presence in the lease of a provision against voluntary alienation by lessee through subleasing or subletting without the consent of the lessor. In refutation of this reasoning, our court there stated: "The lease does not prohibit the assignment of the lease to others, but provides that it may not be assigned without the written consent of the lessor. It follows, therefore, that an assignment may be made with the lessor's consent, and that the lessor never intended the contract as personal to the lessee, but one which could be performed by another who was satisfactory to lessor." (l.c. 189 S.W.2d 1007)

■ In *Warnecke,* supra, we pointed out that the terms of the lease there under consideration defined the word "lessee" to include only " 'The Lessee and his servants, clerks, employees and other representatives, visitors, customers, clients, patients, and common carriers * * *.' " But it did not include his successor or personal representative. This is not the same situation as the case at bar where the language of the lease itself clearly states that the word "lessee" shall include the heirs, executors and administrators of the lessee and that the lease shall be binding upon those

persons. "A lease in writing constitutes a written contract, * * *." Thomas v. Roth, 157 S.W.2d 250, 251 [1] (Mo.App. 1942). "If the terms of a contract are clear and unambiguous the contract will be enforced or given effect in accordance with its terms, and without resort to construction to determine the intention of the parties." Leggett v. Missouri State Life Ins. Co., 342 S.W.2d 833, 851 [11] (Mo. banc 1960). "When the language of a contract is plain, there can be no construction because there is nothing to construe." Mickelberry's Food Products Co. v. Haeussermann, 247 S.W.2d 731, 738 [5] (Mo. 1952). It is not necessary to resort to a rule of construction to ascertain the meaning of a lease where the intent of the parties may be gathered from the terms actually expressed in the writing itself. Conservative Federal Sav. and Loan Ass'n v. Warnecke, 324 S.W.2d 471, 480 [10] (Mo. App.1959). In the lease before us, the language is clear and unambiguous. The terms of the lease are binding upon the heirs, executors and administrators of the lessee.

By stipulation in this case, the fact was established that the apartment occupied by Mrs. Lewis was not vacated of the decedent's effects and capable of being re-rented until on or about August 1, 1971. By testimony of the manager of the apartment house it was established in the evidence up to February 8, 1972, the date the case was heard in circuit court, that Riverbank Associates had been unable to re-rent the apartment even though it had been re-decorated and a diligent effort had been made to advertise its availability and display it to potential tenants. The record, of course, is silent as to what was done after February 8, 1972, until the expiration of the lease on April 30, 1972. Further testimony should be taken with regard to this additional period of time to determine the exact liability of the estate. If the evidence discloses the same diligence on the part of lessor to mitigate damages, then the claim should be allowed in the full amount of $1,890.00 for rent due through April 30, 1972, or at the rate of $135.00 per month for such time as due diligence is shown by the evidence, together with $170.00, the cost of clearing the apartment of decedent's effects and decorating it for re-rental less the sum of the security deposit of $135.00, leaving a total balance due claimant of $1,925.00. This last sum shall depend upon the determination made by the court as to the efforts of claimant to re-rent the apartment during the intervening period from February 8, 1972, through April 30, 1972.

The judgment of the court below is reversed and remanded to hear additional evidence and to enter a new judgment in conformity with instructions contained in this opinion.

DOWD, C. J., and CLEMENS and McMILLIAN, JJ., concur.