Mary Pat Schroeder, Neil J. Bruntrager, St. Louis, for appellant.

Jay L. Levitch, St. Louis, for respondent.

## STANDARD OPERATIONS, INC., Respondent,

v.

## Sharon J. MONTAGUE, Appellant.

### No. 70363.

Supreme Court of Missouri, En Banc.

Oct. 18, 1988.

BLACKMAR, Judge.

On May 31, 1978, the appellant lessor, Sharon J. Montague, leased property in St. Louis County to National Pride Equipment, Inc., lessee, a Missouri corporation, for 20 years with options for renewal. In March of 1979 all of the stock of National Pride was acquired by Standard Operations, Inc., a Delaware corporation, which is the plaintiff and respondent in this case. On September 30, 1983, National Pride was merged into Standard Operations pursuant to the Delaware corporation statutes. No formal notice of the merger was given to the lessor. National Pride continued as an "operating division" of Standard Operations and paid rent to the lessor by its own checks as in the past.

On April 6, 1985, the lessor apparently found out about the merger and sought to declare the merger an event of default under the lease, relying on the following lease provisions (Par.20):

(a) Tenant shall not voluntarily transfer or assign this Lease or its interest in this Lease or in the leasehold created by this Lease, or sublease all or any part of the Demised Premises or allow any other person or entity to occupy or use all or any part of the Demised Premises without first obtaining Lessor's written consent, which consent shall not be unreasonably withheld, and complying with all other applicable provisions of this paragraph 20. Any assignment or sublease not made in compliance with this paragraph 20 shall be voidable and at Lessor's election, shall constitute a default. No consent to any assignment or sublease shall constitute a waiver to any subsequent or other assignment or sublease.

\* \* \* \* \* \*

(f) No interest of Tenant in this Lease or in the Leasehold estate created by this Lease shall be assignable by operation of law. Without limiting the generality of the foregoing, each of the following acts shall be considered an involuntary assignment: (i) if Tenant becomes bankrupt or insolvent, or makes an assignment for the benefit of creditors, or files a debtor proceeding, or files or has filed against Tenant in any court pursuant to any statute either of the United States or of any State a petition in bankruptcy or insolvency or for reorganization or for the appointment of a receiver (except pursuant to paragraph 16(e)) or trustee of all or a portion of Tenant's property, or petitions for or enters into an arrangement, including any proceeding in the nature of proceeding now covered by Chapter X or Chapter XI of the Bankruptcy Act of the United States; (ii) if a writ of attachment or execution is levied on this lease; (iii) if any proceeding or action to which Tenant is a party, a receiver is appointed with the authority to take possession of the Demised Premises under this Lease, except a receiver appointed at the instance of Lessor as in paragraph 16(e), above provided. An involuntary assignment shall constitute a default by Tenant, and this Lease shall terminate and shall not be treated as an asset of Tenant.

Standard Operations sought a declaratory judgment to establish its right to continue in possession of the premises. The lessor filed counterclaims, essentially asserting her right to terminate the lease and take immediate possession. The trial court entered summary judgment in favor of Standard Operations declaring that the merger did not constitute a default and dismissing the counterclaims. The court of appeals reversed and remanded for trial, concluding that factual issues precluded summary judgment. We granted transfer because of the importance of the question of the effect of the merger on the nonassignment clauses, and now affirm the judgment of the circuit court. The case has been well briefed and ably argued by counsel on both sides.

The lessor must demonstrate that the merger transaction violates the lease provision stating that the leasehold estate shall not be "assignable by operation of law." The starting point in our inquiry is the frequently cited case of *Dodier Realty & Investment Company v. St. Louis National Baseball Club*, 361 Mo. 981, 238 S.W.2d 321 (Mo. banc 1951), in which the long lamented St. Louis Browns unsuccessfully tried to eject the formidable Cardinals from historic Sportsman's Park. There we held that a corporate merger was not an assignment of a lease in which one of the parties to the merger was the lessee. We said rather that, on the effective date of the merger, all leasehold estates held by any of the constituent corporations passed to the surviving corporation by "operation of law," along with all other corporate property.

The *Dodier* case does not end our inquiry. That lease prohibited only voluntary assignments. The present lease makes use of the phrase, "operation of law," which was used in the *Dodier* opinion to describe the transaction we found not to be covered, but continues to use the term, "assignment," which we there found to be an inappropriate description of the effect of a merger. The lessor argues that the lan-

guage of her lease effectively includes a merger as a prohibited assignment.

If the lessor's position is upheld she would have a distinct advantage over the lessee. She could hold Standard Operations to the lease so as to have the benefit of her initial bargain, or could use the threat of termination to negotiate with the successor or outsiders for additional remuneration. *Dodier* holds emphatically that forfeitures are viewed with disfavor and that instruments should be construed to avoid the divestment or impairment of valuable rights unless the language is compelling.[1] Merger is expressly authorized by the corporation statutes of all American jurisdictions. A merger transaction is entered into by the parties in pursuit of their economic interests and would usually be expected to be beneficial rather than harmful to the creditors. The possibility of merger is easily foreseeable. *See Alexander & Alexander, Inc. v. Koelz*, 722 S.W.2d 311 (Mo.App.1986). *Cf. Segal v. Greater Valley Terminal Corp.*, 78 N.J.Super. 42, 187 A.2d 374 (1963), *aff'd* 83 N.J.Super. 120, 199 A.2d 48 (1964). A creditor or lessor who fears merger may obtain the desired protection by insisting on express language. There is no reason to indulge in an expansive construction of general language.

The phrase, "assignment by operation of law" is not a term of legal precision.[2] *See,* e.g., *Buddon Realty Co. v. Wallace*, 238 Mo.App. 900, 189 S.W.2d 1002 (1945), holding that the passing of the lessee's interest to the personal representative on death is not an assignment by operation of law. It is appropriate to consider the phrase in context. We are aided in our task both by maxims of construction and by the general reluctance to decree forfeiture.

The second sentence of 20(f) refers to "involuntary assignment," as though that term were synonymous with assignment by operation of law. The specific examples given, bankruptcy, attachment, and receivership, all describe situations in which the rights of an owner of property are involuntarily taken away or suspended because of financial exigencies. A merger is a voluntary transaction, depending on an affirmative vote of the shareholders of the constituent corporations. The analysis in this paragraph is essentially the application of the historic maxim *noscitur a sociis*, sometimes freely rendered as "birds of a feather" or "words are judged by the company they keep."[3] There is substantial indication that only involuntary assignments were intended to constitute acts of default.

The maxim *ejusdem generis* ("of the same kind") is also of assistance here. By that precept of construction, specific enumeration is useful in determining the scope and extent of more general words.[4] Thus a document referring to "horses, cattle, sheep and other animals" will usually be construed as including goats, but not bears or tigers. So here, when all of the specifications are of involuntary transfers occasioned by financial problems, it is reasonable to assume that the general language does not include a voluntary transaction between solvent corporations. Counsel for the lessor argues that the maxim has no application when the general words come first and are followed by specific examples introduced by a caveat such as, "without limiting the generality of the foregoing." The rationale of *ejusdem generis*, however, is that it provides guidance to the intentions of the parties and protects against overexpansive and unintended construction of general language. For these purposes it makes no difference whether the general

---

1. The forfeiture is highlighted by Paragraph 10 of the lease, which requires the lessee to construct a car-wash facility and provides that the improvements may not be removed if the lease is terminated prior to expiration.

2. The term appears only once in Words and Phrases (Vol. 4A, p. 146), in a case dealing with bankruptcy proceedings.

3. *Pollard v. Board of Police Commissioners*, 665 S.W.2d 333 (Mo. banc 1984), *cert. denied* 473 U.S. 907, 105 S.Ct. 3534, 87 L.Ed.2d 657 (1985).

4. *Pollard*, 665 S.W.2d at 341, fn. 12.

language precedes or follows the specific.[5]

The "without limiting the generality" phrase is no doubt effective to exclude the operation of another hoary maxim, *"expressio unius est exclusio alterius,"* which even a person with as little Latin as Shakespeare could undoubtedly translate as "the expression of one is the exclusion of another." Even if the specifics are enlarged by the general, the question of breadth of general language remains. Turning from Latin to English, we consider that the several maxims essentially exemplify the principle of strict construction.

There is one further clue. The prohibition against assignment is not absolute, for "consent shall not unreasonably be withheld." Any potential assignee is clearly advised that he or she must not enter into any arrangement touching and concerning the lease without giving the lessor notice and securing her consent. The merger transaction, however, does not relate directly to the leasehold estate or to the transfer of any other specific property. The lease gives no indication that a merger is a transaction requiring the consent of the lessor and of any other lessor whose lease contains similar language.

We note the lessor's citation of *The Citizens Bank and Trust Co. v. The Barlow Corp.*, 295 Md. 472, 456 A.2d 1283 (1983). The court in that case gave attention to *Dodier,* and seemed disposed to construe "assignment ... by operation of law" broadly, rather than strictly, as though it had been designed to avoid the *Dodier* result. It thus departs from the approach of our cases. We do not find the opinion persuasive and do not choose to follow it. The parties to this lease had convenient access to the *Dodier* opinion, but did not choose the specific language which would include the merger transaction.

Although the lessor's brief in the court of appeals suggests possible questions of fact so as to preclude summary judgment,[6] her brief in this Court states that the lease is "clear and unambiguous," and counsel so stated at oral argument. The statement is appropriate under the record. Lessor's affidavit in opposition to the motion for summary judgment gave no indication of any available evidence of intent, but simply asserted a right to terminate the lease. When the trial court grants summary judgment the losing party has the normal appellant's burden of demonstrating error, and must point to the factual issues deemed to be present. Rule 84.13(b). It is difficult, furthermore to conceive of any evidence which would be admissible to define the terms used. Any possible ambiguity simply relates to the definition of terms and therefore is patent rather than latent. Patent ambiguities must ordinarily be resolved within the four corners, at least when no special facts relating to the particular matter at hand are shown.[7] We are satisfied that no factual questions remain and that the issue may be resolved as a matter of law.

The judgment of the circuit court is affirmed.

BILLINGS, C.J., WELLIVER, ROBERTSON, RENDLEN and HIGGINS, JJ., and GAITAN, Special Judge, concur.

DONNELLY, J., not sitting.

---

5. *United Cal. Bank v. Prudential Ins. Co.,* 140 Ariz. 238, 681 P.2d 390, 425 (App.1983). *Cf. Housing Authority of Mansfield v. Rovig,* 676 S.W.2d 314 (Mo.App.1984), holding that the specific words may follow the general, but that the maxim has no application if the specifics "refer to widely different and variant things." Here the specific items are of the same quality, and substantially different from the fact situation the lessor challenges.

6. The facts mentioned are "notice" and "default," which are material only if the lessor's legal contention that the merger is a prohibited assignment by operation of law is sustained.

7. *Prestigiacamo v. American Equitable Assur. Co.,* 240 Mo.App. 839, 221 S.W.2d 217 (1949). *Campbell v. Dixon,* 647 S.W.2d 617, 621 (Mo. App.1983), suggests that the distinction between latent and patent ambiguities is disappearing, but holds that extrinsic evidence is not admissible to change the language of the instrument.