**WINCHESTER CONSTRUCTION CO., Plaintiff,**

v.

**MILLER COUNTY BOARD OF EDUCATION, David Bracewell, Dole Cook, Jr., Gail Everson, David Varnedoe, and Beatrice Widner, Defendants.**

Civ. No. 92–34–ALB/AMER(DF).

United States District Court, M.D. Georgia, Albany/Americus Division.

May 19, 1993.

Frank C. Vann, Camilla, GA, Davisson F. Dunlap, Jr., William W. Blue, Tallahassee, FL, for plaintiff.

Lindsey L. Cook, George Collier Reid, Atlanta, GA, Ronald H. Rentz, Colquitt, GA, for defendants.

FITZPATRICK, District Judge.

Defendants have moved for summary judgment on the ground that they are not liable to suit in this contract action. Under Rule 56(c) of the Federal Rules of Civil Procedure, the party moving for summary judgment bears the initial burden of showing that there are no genuine issues of material fact that should be decided at a trial of the case and that the movant is entitled to judgment as a matter of law. Once the movant carries this threshold matter, the burden sifts to the nonmoving party to demonstrate that there is indeed a material issue of fact or law precluding summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Where relevant facts are in controversy, "all reasonable doubts ... are to be resolved and all inferences ... are to be drawn in favor of the party opposing the motion." *Mack v. W.R. Grace Co.*, 578 F.Supp. 626, 630 (N.D.Ga.1983).

## BACKGROUND FACTS

On September 8, 1990, the Miller County School Board ("the Board") awarded a contract to W.B. Carlile Construction Company ("Carlile") to renovate and construct additions to the Miller County High School ("the Project"). The contract specifies that no assignment of the contract may be made without approval of the nonassigning party.

Construction began on the Project on or around October 8, 1990, after the Project's architect issued the "start work" order. Subsequent to construction beginning on the Project, Carlile merged with Winchester Construction Company ("Winchester"). Carlile's officers were the same as the officers of Winchester. Upon the effective date of the merger, Carlile ceased to exist and Winchester assumed all of Carlile's rights and obligations in accordance with the Plan and Agreement of Merger. A majority of the work on the Project was completed by Winchester and the Board corresponded with and paid Winchester as portions of the Project were completed and requests for payment were received from Winchester.

During the course of construction, numerous problems arose with the Project. Winchester discovered asbestos in some of the flooring tile that required special handling in its removal. A large storage tank had to be unearthed and removed and other changes in the construction occurred that Winchester alleges caused it additional time and expense. These additional items and delays are the facts upon which Winchester seeks to recover from the School Board under the contract.

The Board has filed a counterclaim under the contract seeking damages for delay and defective or substandard materials and workmanship. The counterclaim also seeks attorney's fees under Georgia Law because Defendants claim Winchester has been stubbornly litigious.

## DISCUSSION

### I. School Board Is Not Subject to Suit

■ The School Board contends first of all that it is not an entity that may sue or be sued under Georgia law. It is well settled in Georgia that, absent a special act of the General Assembly, school boards are not legal entities that are subject to suit. *Cook v. Colquitt County Board of Education*, 261 Ga. 841, 412 S.E.2d 828 (1992). Therefore, summary judgment must be entered with respect to the Miller County Board of Education.

### II. School Board Members in Their Official and Representative Capacities Are Subject to Suit

■ A more difficult issue arises regarding whether the individual board members are subject to suit on the contract in their official and representative capacities. The Defendants assert that they may not be sued. *Knight v. Troup County Board of Education*, 144 Ga.App. 634, 242 S.E.2d 263 (1978). Plaintiff responds that the only way to enforce a contract with the School Board is to sue the individual members in their representative and official capacities. *J.J. Black & Co. v. Atlanta*, 114 Ga.App. 457, 151 S.E.2d 824 (1966). These two decisions are by different divisions of the Georgia Court of Appeals and appear to be irreconcilable.

In *J.J. Black & Co.* Judge Deen, writing for the second division of the court of appeals, held that when the board committing the wrongful act is not a legal entity, the individual board members may be sued in their official and representative capacities. In reaching this conclusion, the court relied upon an earlier decision of the Supreme Court of Georgia. *West v. Carroll*, 201 Ga. 473, 39 S.E.2d 872 (1946). In *West* the court held that individual board members may be sued in their official and representative ca-

pacities to enforce a legal duty of the board. While the petition in *West* sought a writ of mandamus against two of the board members, the holding of the supreme court was broader than the fact situation before it. Judge Deen relied on the breadth of the holding rather than analyzing the factual situation faced by the supreme court.

The court of appeals went further in its discussion of the pleading required under Georgia law to make the individual board members liable for the representative actions. "Where it is sought to make a board of education a party to an action by naming its members in their official capacity as such, the petition is subject to general demurrer unless it specifies that the persons named 'are the duly qualified and acting board members of the board of education, or that they are suing for the board [sued] [sic] in their official and representative capacity as such members.'" *J.J. Black*, 151 S.E.2d at 826 (quoting *Parker v. Board of Education of Sumter County*, 209 Ga. 5, 70 S.E.2d 369, 370–71 (1952)). Again Judge Deen and the court of appeals relied on the holding of the supreme court rather than the facts of the case in reaching their decision that the individual members of the board must be sued when the board is a necessary party to the action.

Defendants on the other hand rely heavily on the decision of another panel of the court of appeals. In *Knight v. Troup County Board of Education*, 144 Ga.App. 634, 242 S.E.2d 263 (1978), Judge Banke for the first division of the court held that there is no maintainable action unless the plaintiff names the **school** district in the lawsuit. That case involved a suit on a contract against the school board, the superintendent, and the school board members in their official capacity. The first division of the court of appeals affirmed the trial court's dismissal of the individual school board members relying heavily on a previous decision of the same division of the court of appeals. *Beckanstin v. Drake*, 89 Ga.App. 636, 80 S.E.2d 506 (1954). Only discussing the factual situations and without citation, the court in *Beckanstin* had distinguished the cases from the Georgia Supreme Court that the second divi-

sion of the court of appeals had relied upon in reaching a contrary resolution in *J.J. Black*. 80 S.E.2d at 508.

The result in *Beckanstin* and in *Knight* clearly countenance breach of contract with no remedy provided the injured party.[1] If this court were to rely on the holding from those cases, parties to contracts with county school boards would be without a remedy against potentially wrongful conduct of the public school board. Defendants correctly note that *Knight* is the latest case to deal with the situation now faced by this court and that it cites *J.J. Black* in its decision.[2] In any event, the court in *Knight* does not discuss the differences between the result in *J.J. Black* and the conclusion reached by the court in *Knight*. It is abundantly clear that the two divisions have contrary conclusions based on the same precedent from the Georgia Supreme Court and no attempt has been made by either division, by the court of appeals *en banc*, or the state's supreme court to discuss or resolve the dispute.

This court concludes that the better rule is that announced by the second division of the court of appeals and Judge Deen. The holding in *J.J. Black* supports the public policy of enforcing contracts between private parties and agents of state government. In addition it relies on the plain language of holdings in the state supreme court that the proper means to sue a public board that is not itself a legal entity is to sue the current board members in their official and representative capacities. This court finds it inconceivable that the Georgia courts would countenance a rule that would permit a public entity to contract for goods or services and leave the provider with no recourse in the event of a breach by the public board. Accordingly, the court concludes that the school board members in their official and representative capacities are appropriate parties to this suit.[3]

## III. Sovereign Immunity

Defendants next contend that no written contract exists between them and Winchester.[4] As a result of this fact, they assert that they have not waived their sovereign immunity with respect to Winchester. Under the Georgia Constitution, sovereign immunity is waived for all actions based on a **written** contract. Art. I, § 2, ¶ IX (1983 & Supp. 1992). Defendants concede that there was a written contract with Carlile and that sovereign immunity would be waived with respect to that company. They argue however, that once Carlile ceased to exist upon its merger with Winchester, the contract with Carlile also ceased to exist without the express consent of the School Board.

No one claims that there was express consent granted to Winchester to continue the work on the project. Winchester argues that, by operation of law as a result of the merger and by acquiescence of the School Board, Winchester was substituted on the contract for Carlile.

There are three issues that must be resolved. First, what are the **rights** of the successor corporation concerning the obligations and liabilities of the constituent corporation after a merger? The second issue is whether a written contract between a constituent corporation and a public entity that would expressly waive sovereign immunity survives the merger into the successor corporation? Third, whether by conduct and course of dealing a public entity is collaterally estopped from denying the existence of a

1. The court does not discuss the facts of the case in *Knight,* but in *Beckanstin,* the court relates that there was an intentional breach of a written contract by the school board. Beckanstin was left with no remedy as a result of the conclusion reached by the first division of the court of appeals in his case.

2. This court believes *J.J. Black* was cited in *Knight* for a proposition for which it does not actually stand.

3. Even though this court has granted summary judgment to the school board as a named party, the court is mindful that its conclusion in Part II of this Order leaves the school board as the real party in interest. Suits against individuals in their official capacities are actually suits against the public entity.

4. It is interesting to note that Defendants deny the existence of any contract with Winchester in the strongest possible terms; yet they have also asserted defenses and counterclaims based on that same contract. The court is curious how the argument now made by Defendants may affect their counterclaim against Winchester.

written contract that would waive sovereign immunity?

### A. Rights of the Successor Corporation Under Florida Law [5]

■ Plaintiff merged with Carlile Construction Company effective February 28, 1991. In their Agreement and Plan of Merger, Carlile and Winchester agreed that the surviving corporation, Winchester, would "succeed to all the rights, privileges, immunities, franchises, property, debts, choses in action, liabilities and obligations of a public as well as of a private nature of Carlile with the effect as set forth in the Florida Business Corporation Act." [6] By the private agreement of the merging parties, Winchester acquired the rights of Carlile when it simultaneously acquired the obligations and liabilities of the constituent corporation. However, this provision of the contract of merger does not resolve the issue presently pending before this court.

Florida's Corporation Act provides that the **liabilities** of the former corporation are assumed by the successor corporation upon a valid merger. F.S.A. § 607.1106(1)(c) (1993). This statute is identical to the Revised Model Business Corporation Act § 1106. No case in Florida has determined if the **rights** of the constituent corporations are also assumed by or automatically vest in the successor corporation.

In one of the few Georgia cases that speaks to this issue, the supreme court held that the successor corporation held possible bases for claims against debtors of one of its constituent corporations. *Comolli v. Coggins*, 200 Ga. 620, 37 S.E.2d 793 (1946). If the suit is filed before the merger occurs then it may be maintained by either the constituent corporation or the successor corporation. *Rosing v. Dwoskin Decorating Co.*, 141 Ga.App. 617, 234 S.E.2d 128 (1977).

Similarly, the Georgia Court of Appeals held in *Employers' Liability Assurance Corp. v. Keelin*, 132 Ga.App. 459, 208 S.E.2d 328 (1974), that only the real party in interest, who must be a legal entity, may maintain an action in court. In that case, Employers' Liability Assurance Corp., Ltd. ("ELAC") had merged with Employer's Commercial Union Insurance Company prior to the filing of the suit. In holding that ELAC was not the proper party to maintain the action, the court held that upon the merger, ELAC ceased to exist and all of its **rights and obligations** transferred to its successor. 208 S.E.2d at 330. That is exactly the situation faced by this court. Upon the effective date of the merger, Carlile ceased to exist. The only entity that might sue or be sued as contractor on the Project is Winchester.

This court believes that a similar result would exist under Florida law. There is no reason to believe that Florida would penalize its corporations for merging by depriving successor domestic corporations of the rights of the constituent corporations. Such a penalty would clearly be the result if the new successor corporation did not possess the rights and privileges of each of its constituent corporations in addition to acquiring the obligations and liabilities of those same corporations.

■ This conclusion is further supported by the court's own research. The general rule is that the successor corporation succeeds to the rights and privileges of the constituents unless some rule of law provides otherwise. *Tennessee v. Whitworth*, 117 U.S. 139, 6 S.Ct. 649, 29 L.Ed. 833 (1886). In Texas the successor corporation has all of the rights and privileges of the constituent corporations. *North American Land Corporation v. Boutte*, 604 S.W.2d 245, 246 (Tex.Ct. App.1980). The same rule is found in the statutes of many states. The Fifth Circuit Court of Appeals in rendering an opinion on a case also from Texas affirmed the lower court's finding that the successor corporation assumed all of the predecessor corporations assets and liabilities. *Philippine Air Lines, Inc. v. Texas Engineering & Mfg. Co., Inc.*, 181 F.2d 923, 924 (1950); *cf. Fairways of Country Lakes Townhouse Assoc. v. Shenan-*

---

**5.** The inquiry into what Florida would do in this situation is required because Winchester and Carlile are Florida corporations. 19 Am.Jur.2d, Corporations § 2629 (1986).

**6.** Agreement and Plan of Merger, ¶ 2.1.

*doah Dev. Corp.*, 113 Ill.App.3d 932, 69 Ill. Dec. 680, 683, 447 N.E.2d 1367, 1370 (1983). Since the successor corporation acquires the rights, privileges and obligations of its constituents, "it plainly has the right to defend and prosecute suits at law and equity for the protection of its rights the same as the original companies could do." 19 Am.Jur.2d, Corporations § 2631 (1986).

Winchester was obligated by law and private agreement to perform the existing obligations of Carlile. With the duty to perform those obligations came the concomitant right to enforce the reciprocal duties of the obligees. The court concludes that the surviving corporation succeeds to the rights of each of its constituents and Winchester has the right to sue on the contract.

### B. Waiver of Sovereign Immunity

No one argues that Winchester did not have a continuing obligation to fulfill the contract with the School Board that Carlile had executed. Both parties also agree that the Georgia Constitution's grant of sovereign immunity extends to the school board. *See Toombs Co. v. O'Neal*, 254 Ga. 390, 330 S.E.2d 95 (1985). Defendants contend that Winchester is not entitled to benefit from the waiver of sovereign immunity granted Carlile by Defendants. This contention is meritless.

As discussed above, upon the merger of Winchester and Carlile, Winchester inherited not only Carlile's liabilities and obligations, but also Carlile's rights and privileges. The contract between Carlile and the School Board waived the Board's sovereign immunity as a matter of law. Ga. Const. Art. I, § 2, ¶ IX.[7] When Winchester succeeded to the contract, it also received the benefit of the School Board's waiver of sovereign immunity on the contract.

Defendants contend that the merger of Carlile and Winchester resulted in an assignment of the contract to Winchester to which they did not consent. This argument is meritless. Defendants cite no case from Florida, nor from anywhere else, that holds that the merger of two corporations constitutes an assignment of the rights of the constituents to the successor. On the contrary, as of the effective date of the merger, the constituent corporation legally and literally becomes the successor corporation and all of its rights and privileges automatically vest in the new corporation. The merger of Carlile and Winchester did not assign the contract with Defendants from one to the other.

### C. Course of Conduct on this Project

Not only is the contractual waiver of sovereign immunity binding on the school board, but the course of conduct of these two parties could support a finding of agreement and consent by the Defendants to modify the contract or to substitute Winchester for Carlile on the contract. This is a mixed question of law and fact.

The following facts could demonstrate to a jury that Miller County School Board has consented by its conduct to the substitution of Winchester as the Project Contractor notwithstanding an express denial to the contrary. The contract between Carlile and the School Board was awarded on September 8, 1990, and construction began on the project on or about October 2, 1990, after Carlile received the begin work order from the project architect. Carlile's President and Secretary are the same as Winchester's officers. On or about February 28, 1991, four months into the project, Carlile merged with Winchester and notice was sent to all of Carlile's obligees regarding the merger. The project was not substantially completed until October 29, 1991, eight months after the merger. During the entire eight months there is no evidence in the record that the School Board communicated any objection to Winchester regarding Winchester's role in the project. The School Board negotiated work change orders with Winchester, made payments to Winchester, and sent the substantial completion document to Winchester as contractor of record. Based on all of these facts, a jury could conclude that the School Board, by its

---

7. "The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies." Art. I, § 2, ¶ 9(c) (Supp.1992).

conduct, consented to the substitution of the Winchester for Carlile as contractor on the Project.

 Defendants cite *Culberson v. Fulton–Dekalb Hospital Authority,* 201 Ga.App. 347, 411 S.E.2d 75 (1991), for the proposition that an implied contract cannot waive the defense of sovereign immunity. That case involved an allegation of medical malpractice, a tort, such that even if there were an implied contract the suit did not seek to recover on the contract. Only if the action is based on a written contract and sounds in contract does the waiver of sovereign immunity in Article I, § 2, paragraph IX apply. In this case there is a written contract that Winchester contends is enforceable against the School Board. If a jury finds that Winchester is substituted for Carlile or modified the contract with the School Board through the course of conduct between the parties, the action would sound in contract and is based on a written contract that would waive the School Board's claim of sovereign immunity.

Genuine issues of material fact exist that make summary judgment on this issue inappropriate.

### *CONCLUSION*

The court concludes that genuine issues of material fact exist for resolution by a jury. As a matter of law the court has concluded that Winchester assumed the rights as well as the obligations of Carlile when the two merged. Not only were Carlile's rights assumed by Winchester, the course of conduct between the School Board and Winchester could support a jury verdict that the Board consented to the modification of the contract to substitute Winchester for Carlile. In either case, the defense of sovereign immunity will have been waived with respect to Winchester.

The School Board's motion for summary judgment is **GRANTED.** The motion by the individual school board members for summary judgment is **DENIED.**

Defendants have also moved the court to compel the production of certain documents and complete answers to their interrogatories. Plaintiff has not responded to this mo-

tion. The court notes that the record reflects supplemental responses to the contested discovery were filed after the motion to compel was filed. To the extent the supplemental answers to the discovery comply with Defendants' requests, the motion to compel is moot. Plaintiff is **ORDERED** to provide the discovery requested by Defendants' motion. Defendants' motion to compel is, therefore, **GRANTED** in part and **DISMISSED** in part.

SO ORDERED.