TXO PRODUCTION CO. and Marathon Oil Co., Appellants,

v.

M.D. MARK, INC., Appellee.

No. 14–97–00105CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 29, 1999.

Rehearing Overruled Aug. 26, 1999.

---

21. 983 S.W.2d 713, 723 (Tex.Crim.App.1998).

22. *Id.* at 725–26.

23. *Id.* at 723.

24. Tex.R.App. P. 25.2(b)(3)(B).

**138**

Macey Reasoner Stokes, Robert O. Thomas, Houston, for appellants.

Bobbie G. Bayless, Spencer Warren Creed, Houston, for appellees.

Panel consists of Justices YATES, MAURICE E. AMIDEI, and EDELMAN.

## CORRECTED OPINION

LESLIE BROCK YATES, Justice.

Our opinion of March 11, 1999 is hereby withdrawn and this opinion substituted.

Appellants, TXO Production Co. ("TXO") and Marathon Oil Co. ("Marathon"), appeal from an order granting summary judgment in favor of appellee, M.D. Mark, Inc. ("Mark"). In five points of error, they contend the trial court erred in (1) ruling as a matter of law that the merger between TXO and Marathon violated the non-disclosure agreement between TXO and Mark's predecessor; (2) refusing to strike an affidavit; and (3)

awarding unconditional attorney's fees and interest from the date of the trial court's judgment. In two cross points, Mark asserts the trial court erred in determining the proper measure of damages and in finding two of its causes of action were barred by limitations. We reverse and render.

## Background

TXO was an oil and gas exploration company and a wholly-owned subsidiary of Marathon.[1] PGI was a geophysical consulting firm which conducted seismic surveys. PGI and TXO entered into a series of contracts between 1979 and 1989 that allowed TXO to use certain seismic data. The contracts changed over the years, but each contained a confidentiality provision that the data "shall not be sold, traded, disposed of, or otherwise made available to third parties." Marathon eventually merged with TXO, and when TXO informed PGI of the merger and that the data would be automatically transferred to Marathon pursuant to the applicable merger statutes, PGI sought a $200 per mile transfer fee to allow Marathon to use the data. Marathon never paid the fee.

Mark subsequently acquired the rights to PGI's data and, based on Marathon's refusal to pay the transfer fee, sued appellants for breach of contract, conversion, and misappropriation of trade secrets. Appellants filed a motion for summary judgment, asserting the statute of limitations barred Mark's conversion and misappropriation claims.[2] Mark filed a response to appellants' motion and its own motion for summary judgment on the breach of contract claim. The trial court found that (1) the merger was a transfer of the seismic data constituting a breach of the parties' agreements; (2) the conversion and

1. Mark noted at oral argument that TXO came to be a subsidiary of Marathon shortly before the merger. It acknowledged, however, and the summary judgment evidence establishes, that both TXO and Marathon were subsidiaries of U.S. Steel prior to that time.

2. Appellants also asserted the merger did not violate confidentiality provisions; however, the court denied this portion of appellants' motion in a partial summary judgment order and incorporated this order in its final judgment.

misappropriation claims were barred by limitations; (3) Mark's damages were limited to the $200 per mile transfer fee.

## Standard of Review

We review the trial court's order granting summary judgment by viewing the evidence in the light most favorable to the non-movants, indulging all reasonable inferences in their favor. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). Summary judgment is appropriate only when the movant establishes there is no genuine issue of fact and that he is entitled to judgment as a matter of law. *See* Tex.R. Civ. Proc. 166a(c). When a plaintiff moves for summary judgment, he must prove he is entitled to summary judgment on each element of his cause of action. *See Rizkallah v. Conner*, 952 S.W.2d 580, 582 (Tex.App.—Houston [1 st Dist.] 1997, no writ).

## Whether the Merger Violated the Non–Disclosure Agreements

█ In their first and second points of error, appellants contend the trial court erred in holding, as a matter of law, that their merger violated the non-disclosure agreements. They argue the court's construction of the contract conflicts with the majority of jurisdictions which have considered the issue.

We begin by noting that no case in Texas and or in any other jurisdiction has addressed this specific issue. However, courts in other jurisdictions have addressed the effect of a merger on other restrictive provisions. For example, courts have addressed the effect of a merger on a non-assignment clause in an insurance policy which called for termination of the contract in the event of an assignment to which the insurer did not consent. *See, e.g., Imperial Enters., Inc. v. Fireman's Fund Ins. Co.*, 535 F.2d 287 (5 th Cir.1976); *Brunswick Corp. v. St. Paul Fire & Marine Ins. Co.*, 509 F.Supp. 750, 753 (E.D.Pa.1981); *Paxton & Vierling Steel Co. v. Great Am. Ins. Co.*, 497 F.Supp. 573 (D.Neb.1980). In *Imperial*, the policy between the insurer and insured stated that an assignment of interest was not binding on the insurer without its consent. *See* 535 F.2d at 290. The insured corporation merged with its parent after the effective date of the policy, and a fire subsequently destroyed a plant. The surviving corporation sought coverage for the damages. *See id.* at 289. The court found that the merger was not a wrongful assignment which justified denying liability, noting that Georgia law was to the contrary, there was no increased risk to the insurer as a result of the merger, and the transfer occurred by operation of law rather than as a personal assignment. *See id.* at 291–93. Similarly, in *Paxton & Vierling*, a corporation was insured under a policy containing a no-assignment provision. *See* 497 F.Supp. at 574. It merged with its parent corporation and suit was brought against the surviving corporation for a claim arising against the merged corporation. *See id.* at 574–75. The court held that a provision limiting assignment in an insurance policy does not apply to a transfer occurring by operation of law. *See id.* at 581. Like the *Imperial* court, it also noted the merger did not create an increased risk. *See id.*

Numerous courts also have addressed the effect of a merger on a non-assignment clause in a real estate lease. *See, e.g., Giaise v. Cuccia*, 420 So.2d 700 (La.Ct. App.1982); *Standard Operations, Inc. v. Montague*, 758 S.W.2d 442 (Mo.1988); *Dodier Realty & Inv. Co. v. St. Louis Nat'l Baseball Club, Inc.*, 361 Mo. 981, 238 S.W.2d 321 (1951); *Segal v. Greater Valley Terminal Corp.*, 83 N.J.Super. 120, 199 A.2d 48 (1964); *Brentsun Realty Corp. v. D'Urso Supermarkets, Inc.*, 182 A.D.2d 604, 582 N.Y.S.2d 216 (N.Y.App.Div.1992); *Sante Fe Energy Resources v. Manners*, 430 Pa.Super. 621, 635 A.2d 648 (1993). In *Dodier*, the parties' lease prohibited assignment of the lease and provided that the contract could be terminated for breach of this and various other covenants.

*See* 238 S.W.2d at 323 n. 1 & 2. The lessee merged into a corporation which owned all but a fraction of the lessee's stock, and the lessor sued to eject the lessee based on the non-assignment clause. *See id.* at 322. The court noted that the applicable merger statute, providing for the cessation of the separate identities of the merging corporations, resulted in a dissolution of the merging corporation by operation of law, and thus there was no assignment within the prohibition. *See id.* at 325. In *Brentsun,* a supermarket entered into a lease providing it would not assign the lease without the lessor's consent. *See* 582 N.Y.S.2d at 217. The lease was assigned with consent to another corporation, which later merged into its parent. *See id.* As a result of the merger, the landlord refused to allow the lessee to renew the lease. *See id.* The court, however, held that the merger was not an assignment in violation of the non-assignment clause, as it did not change the ownership, possession, or control of the property. *See id.*

An obvious basis for the outcome in the above cases is that courts disfavor forfeiture in insurance policies and leases. *See Imperial,* 535 F.2d at 290; *Paxton,* 497 F.Supp. at 581; *Dodier,* 238 S.W.2d at 323. Courts, however, have been equally unwilling to find that merger breaches a non-assignment provision in other circumstances. *See, e.g., In Matter of Chicago, Milwaukee, St. Paul & Pac. R.R.,* 799 F.2d 317, 337 (7th Cir.1986) (finding a non-assignment clause in a trackage rights agreement inapplicable to a merger); *Winchester Constr. Co. v. Miller County Bd. of Educ.,* 821 F.Supp. 697, 698, 702 (M.D.Ga.1993) (finding no violation of a non-assignment clause in a construction contract where an original party to the contract merged with another corporation); *Sun World Corp. v. Pennysaver, Inc.,* 130 Ariz. 585, 637 P.2d 1088, 1089, 1092 (1981) (finding a non-assignability clause in a printing contract did not, as a matter of law, bar a claim on an open account brought by the surviving corporation of one of the original parties to the

contract); *Trubowitch v. Riverbank Canning Co.,* 30 Cal.2d 335, 182 P.2d 182, 184, 190 (1947) (holding a surviving corporation could be required to honor an arbitration clause in a contract between the merged corporation and another party, despite a non-assignment provision in that contract); *Alexander & Alexander, Inc. v. Koelz,* 722 S.W.2d 311, 313, 314 (Mo.Ct.App.1986) (finding a surviving corporation could enforce a covenant not to compete in a contract between a merged corporation and another party, despite the general rule against the non-assignability of personal contracts). In addition, the First Court of Appeals recently held that the merger of a wholly-owned subsidiary into its parent does not constitute a sale of the subsidiary so as to invoke a clause requiring the payment of a bonus in the event of the subsidiary's sale. *See Docudata Records Management Svcs., Inc. v. Wieser,* 966 S.W.2d 192, 198 (Tex.App.—Houston [1st Dist.] 1998, pet. denied).

Mark cites to cases that have found a corporate merger violates an anti-assignment provision. *See, e.g., PPG Indus., Inc. v. Guardian Indus. Corp.,* 597 F.2d 1090, 1095 (6th Cir.1979); *Nicolas M. Salgo Assocs. v. Continental Ill. Properties,* 532 F.Supp. 279 (D.D.C.1981). Mark relies primarily on *PPG.* In that case, PPG and Permaglass each independently developed a process to fabricate glass, and they agreed to grant each other rights to their patents. *See* 597 F.2d at 1091. The agreement granting the rights contained a non-assignability provision, which PPG claimed Permaglass breached when it later merged with an unrelated third party. *Id.* at 1092–93. The court agreed, noting that if the parties desired an exception to their non-assignability provision in case of merger, they could have so provided. Since they did not, the provision of non-assignability prevailed. *Id.* at 1095.

In *Salgo,* a partnership agreement prohibited the partners from assigning any interest in the partnership without the oth-

er's written consent. Subsequently, a third party acquired a controlling interest in one of the parties, and the two merged. *See* 532 F.Supp. at 280–81. The non-merging partner sought default remedies under the partnership agreement as a result of the merging partner's failure to secure approval for the merger-transfer. *Id.* at 280. The court found the merger violated the anti-assignment clause, since the parties could have provided an exception to non-assignment if they desired, but they did not do so. *Id.* at 283. The court placed great importance on the fact that the parties were savvy business entities and that public policy dictated against forcing one party to accept a partner it did not intend. *Id.*

We disagree with the reasoning and outcome of *PPG* and *Salgo*. Furthermore, those cases are distinguishable because there, the corporations merged into unrelated entities. *See PPG*, 597 F.2d at 1092.[3] In a majority of the cases cited above, as well as in the present case, a subsidiary merged into a parent corporation. *See, e.g., Imperial Enters., Inc. v. Fireman's Fund Ins. Co.*, 535 F.2d 287 (5 th Cir.1976); *Star Cellular Tel. Co. v. Baton Rouge CGSA, Inc.*, 1993 WL 294847 (Del.Ch. Aug.2, 1993), *aff'd* 647 A.2d 382 (Del.1994);

*Alexander & Alexander, Inc. v. Koelz*, 722 S.W.2d 311 (Mo.Ct.App.1986); *Paxton & Vierling Steel Co. v. Great Am. Ins. Co.*, 497 F.Supp. 573 (D.Neb.1980); *Segal v. Greater Valley Terminal Corp.*, 83 N.J.Super. 120, 199 A.2d 48 (1964); *Brentsun Realty Corp. v. D'Urso Supermarkets, Inc.*, 582 N.Y.S.2d 216, 182 A.D.2d 604 (N.Y.App.Div.1992); *see also Trubowitch v. Riverbank Canning Co.*, 30 Cal.2d 335, 182 P.2d 182 (1947) (finding no violation where a corporation dissolved and transferred all its assets to its shareholders, who formed a co-partnership). Because the change was merely one of corporate form, the courts concluded the merger did not involve an increased risk to the non-merging party. *See Imperial*, 535 F.2d at 291; *Segal*, 199 A.2d at 50; *Brentsun*, 582 N.Y.S.2d at 217; *see also Trubowitch*, 182 P.2d at 188. By contrast, the non-merging parties in *PPG* and *Salgo* were obviously prejudiced as a result of the merger: in *PPG*, the third party into which Permaglass merged gained access to a patent right it would not otherwise have had absent the merger,[4] and in *Salgo*, the non-merging party was forced to accept a partner with whom it did not agree to form a partnership. Finally, the holdings of both

---

**3.** Another notable reason to avoid reliance on *PPG* is the Texas Legislature's express desire to avoid the result in that case. Two members of the Corporate Law Committee of the Corporation, Banking, and Business Law Section of the State Bar of Texas have written that the Texas Business Corporations Act was amended to its present wording to prevent the possibility of a merger constituting a transfer and thus violating a non-assignment clause. They specifically listed the *PPG* case as having a result the Committee wished to avoid. *See* Byron F. Egan & Amanda M. French, *1987 Amendments to the Texas Business Corporation Act and Other Texas Corporations Laws*, 25 BULL. BUS. L. SEC. ST. B. TEX. 1, 10 & n. 52 (Sept.1987); *see also* TEX. BUS. CORP. ACT ANN. art. 5.06 Comments of Bar Committee—1996 (Vernon Supp.1998) (noting the amendments to the Act clarified that a merger vested rights in property without the occurrence of an assignment or transfer).

**4.** The *PPG* opinion also was based on strong public policy against the implied assignment of patent licenses. *See* 597 F.2d at 1093. Mark contends this case involves the transfer of trade secrets, which is akin to the transfer of patent rights. Mark, however, had the burden to establish the seismic data is a trade secret. *See H.E. Butt Grocery Co. v. Moody's*, 951 S.W.2d 33, 35–36 (Tex.App.—Corpus Christi 1997, writ denied). Mark has failed to make this showing, simply making the conclusory determination that the seismic data is a trade secret. Further, in its motion for summary judgment, Mark failed to establish the extent to which employees and others in the business know the information and the ease with which others could acquire or duplicate the information, necessary elements to establish a trade secret. *See Expo Chem. Co., Inc. v. Brooks*, 572 S.W.2d 8, 11, 12 (Tex.App.—Houston [1 st Dist.] 1978), *rev'd on other grounds*, 576 S.W.2d 369 (Tex.1979). Accordingly, we will not consider whether the seismic data constituted a trade secret.

cases are contrary to the merger statutes, as addressed more fully below.

■ Appellants contend the court's order conflicts with the applicable merger statutes, i.e., the Delaware Code,[5] the Ohio Code,[6] and the Texas Business Corporation Act.[7] In general, these statutes provide that all rights, privileges, and obligations belonging to the merging corporation vest in the surviving corporation upon merger. All of these merger statutes are based upon the Model Business Code, the comments to which explicitly state that a merger is not a conveyance or transfer and that the surviving corporation automatically becomes the owner of all real and personal property in the event of a merger. *See* 3 Model Bus. Corp. Act Ann. § 11.06 cmt. (1996 Supp.).[8]

According to appellants, the court's interpretation prevents the flow of TXO's contractual rights to Marathon, in violation of the statutes. We agree. Under the merger statutes it is clear that all of TXO's interests vested in Marathon immediately upon the merger. Further, under these provisions there is no transfer of the rights of the merging corporation; rather, the rights vest automatically and without further action. Accordingly, a requirement

that the surviving corporation pay a fee in the event of a merger unnecessarily hinders the free flow of those rights to the surviving corporation. *See, e.g., Brunswick Corp. v. St. Paul Fire & Marine Ins. Co.,* 509 F.Supp. 750, 753 (E.D.Pa.1981); *see also Winchester Constr. Co. v. Miller County Bd. of Educ.,* 821 F.Supp. 697, 701 (M.D.Ga.1993); *Alexander & Alexander, Inc. v. Koelz,* 722 S.W.2d 311, 313 (Mo.Ct. App.1986).

■ The merger statutes also refute Mark's claim of harm resulting from the disclosure. Mark contends that the merger allowed Marathon to have access to seismic data that it would otherwise not have had. Furthermore, Mark notes that both Marathon and TXO were its customers prior to the merger, but the merger allowed two entities to have access to data for which only one paid a fee. To the contrary, the merger statutes make clear that, after a merger, there remains only one entity, and the separate existences of the merging corporations cease. *See* Del. Code Ann., tit. 8, § 259; Ohio Rev.Code Ann. § 1701.82; Tex. Bus. Corp. Act Ann. art. 5.06. Because Marathon did not have access to the seismic data until after the merger, and because after the merger only one entity existed, Mark cannot claim it

5. TXO was incorporated in Delaware. The Delaware Code provides that all rights, privileges, powers, franchises, property, debts, stock subscriptions, and all things in action or belonging to the merging corporation vest in the surviving corporation when the merger becomes effective. *See* Del.Code Ann., tit. 8, § 259 (1991).

6. Marathon was incorporated in Ohio. The Ohio Code provides that all assets, property, rights, privileges, immunities, powers, franchises, and authority of the merging corporation vest in the surviving corporation without further act or deed. *See* Ohio Rev.Code Ann. § 1701.82(A)(3) (Anderson 1997).

7. The Texas Business Corporation Act provides that the rights, title, and interest in property of the merging corporations vest in the surviving corporation upon merger without further act or deed and without any transfer having occurred. *See* Tex. Bus. Corp. Act Ann. art. 5.06 (Vernon Supp.1998). Mark argued in its summary judgment motion that

an earlier version of the Act applied, which provided that the property of the merging corporation was deemed transferred upon the merger. *See* Tex. Bus. Corp. Act Ann. art. 5.06 (Vernon 1980). This version of the statute, however, was replaced in 1987 to make clear that the vesting of rights pursuant to a merger occurred without a transfer or assignment of rights. *See* Tex. Bus. Corp. Act Ann. art. 5.06 Comments of Bar Committee–1996 (Vernon Supp.1998). Because all of the events germane to the merger in this case occurred after the effective date of the new Act, the former version is inapplicable. In any event, this section of the Texas Business Corporations Act is inapplicable to foreign corporations.

8. Because the statutes are worded essentially the same, and because the result is the same under all three, we need not decide which state's law applies.

was entitled to a fee from both entities and thus sustained a monetary loss.

We next look to the contracts themselves for guidance as to the effect of the merger on the non-disclosure provisions. A number of courts that have found mergers do not violate anti-assignment provisions have considered the parties' failure to expressly state that the provision is triggered by a merger. *See Standard Operations, Inc. v. Montague,* 758 S.W.2d 442, 444 (Mo.1988) (noting "[a] creditor or lessor who fears merger may obtain the desired protection [from assignment by operation of law] by insisting on express language); *Alexander & Alexander,* 722 S.W.2d at 313 (disregarding the defendant's argument that the contract's silence on assignability required a finding of non-assignability and noting that the silence combined with the changeable corporate nature created an equally strong inference that the contract was assignable). We also reiterate that the Texas Legislature intended by its amendments to the Business Corporations Act that a prohibited transfer would not be implied by merger but would only occur in the event the parties agreed that merger specifically violated an anti-assignment provision. *See* Egan & French, 25 BULL. BUS. L. SEC. ST. B. TEX. at 10.

Here, the contracts provided that the data "shall not be sold, traded, disposed of, or otherwise made available to third parties." Arguably, the agreements' prohibitions on making the seismic data "available" could encompass statutory merger, which by operation of law makes all property of the merging corporation the property of the survivor, thereby making that property available to the survivor. However, the possibility of merger was certainly foreseeable under the circumstances. *See Alexander & Alexander,* 722 S.W.2d at 313; *Segal,* 199 A.2d at 51. The parties could have easily specified that the non-disclosure provision was implicated by a statutory merger, but they chose not to do so. In accordance with the holdings of the cases cited above and the policy enunciated by the drafters of the Texas Corporations Business Act, we will not imply a violation of the non-disclosure agreement in light of the parties' failure to address this situation.

## Conclusion

The trial court held that as a matter of law, the merger of Marathon and TXO constituted a transfer of the seismic data to a third party. This holding conflicts with the applicable merger statutes and the majority of cases which have considered similar issues. As such, we find Mark was not entitled to judgment as a matter of law, and the trial court erred in granting summary judgment in its favor. We further hold that, as a matter of law, the merger did not constitute a prohibited transfer or disclosure, and appellants were entitled to summary judgment. Because of our disposition of point of error one, we need not address points two through five or Mark's cross point concerning damages.

██ In a conditional cross point, Mark argues the trial court erred in holding that Mark's claims for conversion and misappropriation were barred by the applicable two year statute of limitation. According to Mark, the statute of limitations did not begin to run until Marathon ended settlement discussions and indicated that it would no longer segregate the seismic data. Mark does not provide any argument concerning when the statute of limitation began to run, and it does not cite to any authority supporting its position. As such, it has waived this point of error. *See* TEX.R.APP. P. 38.1(h). We overrule Mark's conditional cross-point.

We reverse and render judgment for all appellants as to Mark's claims.