NO. 07-02-0015-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 2, 2002

_____

BETTY FROST MCALEER, APPELLANT

V.

EASTMAN KODAK COMPANY AND
EASTMAN CHEMICAL COMPANY, APPELLEES

_____

FROM THE 359TH DISTRICT COURT OF MONTGOMERY COUNTY;

NO. 97-12-04730-CV; HONORABLE JIM KEESHAN, JUDGE

_____

Before QUINN and REAVIS, JJ., and BOYD, SJ.[1]

Appellant Betty Frost McAleer appeals from a summary judgment in favor of

appellees Eastman Kodak Company (Kodak) and Eastman Chemical Company (Chemical)

in her lawsuit seeking declaratory judgment with respect to what she alleges is a license

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 2002).

agreement and damages for trespass. The agreement granted the right to Kodak to lay and operate a pipeline across certain real property in Montgomery County owned by the predecessors-in-interest to appellant. The dispute between the parties arose as a result of the creation by Kodak of a new corporation, Chemical, and the ability of Kodak to assign those rights to Chemical or the right of Chemical to succeed to the rights of Kodak under the agreement. Appellant claimed that no such right existed and that the agreement terminated as a result of Kodak's purported assignment. Kodak asserted a counterclaim for declaratory judgment. The trial court denied summary judgment to appellant and granted summary judgment in favor of appellees awarding them attorney's fees.

Appellant claims the trial court erred in ignoring the terms of the license agreement, which were clear and unambiguous and in refusing to apply the law as it existed when the license agreement was executed. The pertinent language of the agreement over which the parties disagree is as follows:

> The permission herein granted is personal to Second Party, and may not be assigned or conveyed. If Second Party shall be merged or be consolidated with or into another corporation or if another corporation shall acquire all or substantially all of the property of Second Party, the resulting or succeeding corporation shall succeed to this permit and shall be personally liable to First Party, their successors and assigns, for the performance of the obligations hereof which subsequently accrue.

The agreement also provided that it could be terminated at the option of the first party in the event of default by the second party. The original 1961 license or easement was in favor of "Eastman Kodak Company, a New Jersey corporation of which Texas Eastman Company is a division." In 1988, an amendment to the agreement was executed by

2

appellant in favor of "Texas Eastman Company, a division of Eastman Kodak Company" to permit the laying of a second pipeline. Then, in December 1993, Kodak mailed a letter to appellant notifying her: "Kodak intends to divest itself of substantially all of the assets of its Eastman Chemical Company division through a stock spin-off that will occur on or about January 1, 1994 (the 'Spin-off'). The Spin-off will result in Kodak's Eastman Chemical Company division becoming a separate and independent corporation chartered under the laws of the state of Delaware ('Eastman Chemical Company')." As part of the transaction, Kodak intended to assign all of its rights and obligations under the agreement with appellant to Chemical. Although appellant refused to consent, the assignment subsequently occurred.

The standards applicable to review of a traditional motion for summary judgment are so well established as to make their reiteration unnecessary. *See Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548-49 (Tex. 1985). When the trial court fails to specify the grounds upon which summary judgment was granted, as in this case, we must affirm it if any of the grounds stated in the motion are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989). Appellees sought summary judgment on the basis that the agreement was transferred by operation of law, the law does not favor forfeiture and, alternatively, the assignment from Kodak to Chemical specifically excluded any agreements which by their terms would become void or voidable if assigned, which could not be transferred without consent of other parties whose consent had not been secured, or which could not lawfully be conveyed.

In her first issue, appellant claims the trial court erred in ignoring the terms of the agreement which were unambiguous. Those terms, she asserts, specifically provide that the agreement may be assigned only in the event Kodak merged with or was consolidated with another corporation, *i.e.*, one company combining with another, and do not apply in the event that one company is split into two companies by a spin-off action. Appellant posits that the meaning of the words used should be given their common one and the court should uphold the intent of the parties to the original agreement as expressed in those words.

In her second issue, she complains that the trial court erred in refusing to apply the law as it existed at the time the agreement was executed. The gist of this complaint is that, while the current provisions of the Texas Business Corporation Act specifically define "merger" to include the division of a corporation into two or more new corporations, that statute applies only to domestic corporations, meaning Texas corporations, which Kodak is not, and it constitutes an ex post facto law that the parties did not contemplate when executing the agreement. Because appellees argue appellant's two issues together in their response, we will likewise discuss them together.

Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of circumstances present when the contract was entered. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex. 1996). A contract is ambiguous if its meaning is uncertain and doubtful or if it is reasonably susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393-

4

94 (Tex. 1983). However, conflicting interpretations of a contract and unclear and uncertain language do not necessarily mean a contract is ambiguous. *Cook Composites, Inc. v. Westlake Styrene Corp.,* 15 S.W.3d 124, 131 *(*Tex.App.--Houston [14th Dist.] 2000, pet. dism'd)*.* Our primary concern in reviewing the contract is to determine and give effect to the intentions of the parties as expressed in the contract. *Coker,* 650 S.W.2d at 393.

Appellant argues that, because we are required to examine the contract in light of circumstances present when the contract was entered into, we may not consider any current definitions of merger which might include a spin-off or the splitting of one company into two companies. She cites to a 1961 version of Webster's Collegiate Dictionary and a 1990 Black's Law Dictionary which contain definitions of merger which reference an absorption of one company by another. Therefore, she posits, we must interpret the contract in light of the ordinary meaning of merger in 1961, which did not include a splitting apart of one company.

The provision in question does not specifically define the meaning of merger. However, appellees rely upon an amendment to the Texas Business Corporation Act in 1989, which defines a merger as follows:

> (a) the division of a domestic corporation into two or more new domestic corporations or into a surviving corporation and one or more new domestic or foreign corporations or other entities, or (b) the combination of one or more domestic corporations with one or more domestic or foreign corporations or other entities resulting in (i) one or more surviving domestic or foreign corporations or other entities, (ii) the creation of one or more new domestic or foreign corporations or other entities, or (iii) one or more

5

> surviving domestic or foreign corporations or other entities and the creation of one or more new domestic or foreign corporations or other entities.

Tex. Bus. Corp. Act Ann. art 1.02(A)(18) (Vernon Supp. 2002). The comment to that provision states that the definition of merger was expanded beyond the typical definition of a combination of two or more corporations into a single corporation. *Id.* cmt.

Initially, we note that this statute is not an ex post facto law as referred to by appellant. The prohibition against ex post facto law applies only to retroactive criminal or penal laws. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 633 (Tex. 1996). Further, no claim has been made by appellees that the statute itself is actually applicable to this particular transaction. The reference to the statute is being used "as demonstrating the legislature's intent that the common law should treat mergers and spin offs as the same corporate reorganization vehicle/tool."

Article 5.06 of the Business Corporation Act further provides that when a merger takes effect, "all rights, title and interests to all real estate and other property owned by each domestic or foreign corporation and by each other entity that is a party to the merger shall be allocated to and vested in one or more of the surviving or new domestic or foreign corporations and other entities as provided in the plan of merger without reversion or impairment, without further act or deed, and without any transfer or assignment having occurred . . . ." Tex. Bus. Corp. Ann. art. 5.06A(2) (Vernon Supp. 2002). The comment to that article further states in relevant part:

6

In 1987, Article 5.06 was amended to make clear that while a merger vests the rights, privileges, immunities and franchises of the merged corporation in the surviving corporation, this is accomplished without a transfer or assignment having occurred. Prior to the 1987 amendment of TBCA, Article 5.06A, it was possible that a merger could have been viewed to constitute a transfer in the context of a contract or license that required prior approval for a transfer or assignment.

*Id.* cmt. Appellees assert that the transfer herein occurred under the common law doctrine of assignment by operation of law in the manner discussed in this comment.

In support of this argument, appellees cite us to the case of *TXO Production Co. v. M.D. Mark, Inc.,* 999 S.W.2d 137 (Tex.App.--Houston [14[th] Dist.] 1999, pet. denied), for the proposition that a merger does not violate a non-assignment clause in a contract. In that case, TXO Production Company (TXO) and PGI entered into a series of contracts that allowed TXO to use seismic data owned by PGI. Under the contracts, the data was not to be made available to third parties. When TXO merged with Marathon Oil Co., PGI sought to charge a transfer fee to allow Marathon to use the data. The court discussed case law in other jurisdictions which have found a merger not to be a violation of a non-assignment provision in insurance policies and real estate leases. In its discussion, the court noted that courts disfavor forfeiture in leases. *Id.* at 140. Two other factors relied upon by the court in deciding that a fee was not owed were the parties' failure to state that the non-assignment provision was triggered by a merger and the intent expressed by the legislature that a prohibited transfer would not be implied by a merger. *Id.* at 143.

We note the distinction between that case and the one before us in that there was no dispute in the former as to the definition of merger which is really the issue which we must decide. The construction of an unambiguous contract is a matter of law. *Elliott - Williams Co., Inc. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999). In making that construction, we must do so from a utilitarian standpoint bearing in mind the particular business activity sought to be served. *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 530 (Tex. 1987). The meaning of a particular word in a contract depends on the kind and character of the contract, its purposes and circumstances, and the context. *Enchanted Estates Community Assn., Inc. v. Timberlake Imp. Dist.,* 832 S.W.2d 800, 802 (Tex.App.--Houston [1st Dist.] 1992, no writ).

It has been held that for a non-assignability clause to prevent assignment, it must be proved that the grantor relied on the personal trust, confidence, skill, character, or credit of another party. *Eland Energy, Inc. v. Rowden Oil & Gas, Inc.,* 914 S.W.2d 179, 187 (Tex.App.--San Antonio 1995, writ denied). While there is no evidence that appellant relied on any of those features in this instance, the agreement does permit another party to succeed to the rights of Kodak in certain situations. Therefore, we must determine if the situation before us was intended to be one of those in which a succession of rights was to occur.

The agreement provides that the permission granted is to be personal to the grantee. Thus, the intent was that some unrelated third party was not to be able to assert the rights given to Kodak. However, recognizing that corporate restructuring does happen,

8

in the event of such a situation through merger or consolidation with or into another corporation or if another corporation acquires substantially all of the assets of Kodak, the resulting company was to succeed to Kodak's rights. While appellant argues that the placement of the word "merger" indicates that it is not intended to mean anything other than the combination of two entities into one, it could also be argued that the placement of the word was intended to mean something different than "consolidation with or into another corporation" or there would have been no need to use both phrases.

The apparent reason for this provision was so that the possession or control of the property would not be substantially changed, and therefore there would be no greater risk to the landowner who has sought to protect himself by a non-assignability clause. In this instance, Texas Eastman Company, with which appellant had already executed an amendment of the agreement, was a division of Chemical, which was a wholly owned business of Kodak. Chemical was then created into a separate corporate entity, the shares of which were distributed to the shareholders of Kodak. The services provided by the new corporation are the same. Thus, appellant will, in effect, be dealing with the same group she dealt with before, only now its assets are owned by a separate corporation which was formerly an unincorporated division of Kodak. We do not see that the purpose of the non-assignability provision is abrogated by this event. We also recognize legislative intent, expressed prior to the transaction that is the subject of this lawsuit, that the definition of merger should be a broad one and that a merger should not violate a non-assignability clause. We further recognize that the law does not favor forfeitures, and we should therefore only construe an agreement to result in forfeiture if there can be no other

9

construction. *See Reilly,* 727 S.W.2d at 530; *TBS Exco, Inc. v. E. N. Smith, III Energy Corp.,* 818 S.W.2d 417, 422 (Tex.App.--Texarkana 1991, no writ); *Cambridge Oil Co. v. Huggins,* 765 S.W.2d 540, 543 (Tex.App.--Corpus Christi 1989, writ denied).

Therefore, bearing in mind the kind of contract, its purpose, and public policy considerations, we believe the only reasonable construction of the contract is that the transaction involved does not violate the non-assignability provision of this agreement, and that the new corporation succeeded to the rights and obligations of Kodak. The summary judgment is affirmed.

John T. Boyd
Senior Justice

Do not publish.